BROWER et al. v. WILLIAMS et al.

(Supreme Court, Appellate Division, First Department. November 10, 1899.)

1. PARTY-WALL AGREEMENTS—RECORDATION—TEMPORARY INJUNCTION.
     Where a party-wall agreement was never recorded, and the purchaser of one lot had no notice of it, and the owner of the other had never used the wall, nor paid his share of the cost, it was not a party wall as to the purchaser, and he had a right to assume it was a wall of his own building partially built on the adjoining lot through ignorance or misconception of the location of the true line; and hence, pending suit to restrain him from tearing it down, temporary injunction will be dissolved.

2. SAME.
     Moreover, defendant having contracted to erect a $150,000 house by a certain time, and lease it at $17,000 a year, the damages he would sustain would so exceed possible damages of plaintiff pending suit that the court would be justified in refusing temporary injunction.

Appeal from special term, New York county.

Suit by John Le Foy Brower and another, trustee, against John T. Williams and another. There was an order refusing to continue, pendente lite, a temporary injunction, and plaintiffs appeal. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Charles De Hart Brower, for appellants.

D. B. Ogden, for respondents.

McLAUGHLIN, J. The defendant Williams is the owner of a plot of land situated on the northeast corner of Beach and West streets in the city of New York, and the plaintiffs are the owners of a plot immediately adjoining it on the north. In June, 1867, the plot now owned by Williams was owned by William Chamberlain and George A. Phelps, and the plot now owned by the plaintiffs was owned by one John L. Brower. In that month, Chamberlain and Phelps and Brower entered into a written agreement, which recites that the parties were the respective owners of the land referred to, and that Chamberlain and Phelps were about to erect upon their lot a building, and, inasmuch as all the parties were desirous of having a party wall between the two lots, it was agreed that Chamberlain and Phelps should erect, in connection with their building, a party wall, not less than eight inches of which should stand upon the land of Brower, and that the wall, when erected, should be, and thereafter remain, a party wall, to be used in common by the respective owners and their successors in interest. Brower covenanted for himself, his heirs, executors, administrators, and assigns, that as soon as he, or any one claiming under him, should use the wall, he or they would pay to Chamberlain and Phelps, or their successors in interest, the value of so much of the wall as should then be standing upon Brower's land, such value to be ascertained in the manner pointed out in the agreement. This agreement had not, at the time Williams purchased, been recorded. In pursuance of the agreement, Chamberlain and Phelps constructed one wall of their building so that eight inches of it stood upon Brower's land. At that time there was standing upon Brower's land a building having an independent wall, which was not contiguous to, or in any way connected with, the wall constructed by Chamberlain and Phelps, but which was separated from it by a space of from 1 to 2½ inches, except near the front, where the space was filled in. The plaintiffs and their predecessors in interest never used the wall built by Chamberlain and Phelps, and they never paid any part of the cost of its construction. The defendant Williams acquired his interest in May, 1898, and it is not disputed that at the time of his purchase he had no knowledge, either actual or constructive, of the agreement above referred to. Shortly after the purchase, the defendant commenced to tear down the building standing on his land, for the purpose of erecting a new building thereon at a cost of over $150,000, plans and specifications of which had theretofore been filed with the building department; and he commenced

to remove the old wall erected by Chamberlain and Phelps.   He had taken it down as far as the second story, when the plaintiffs applied for and obtained a temporary injunction pending the return of an order to show cause why the same should not continue during the pendency of the action, restraining him from proceeding with that work.   Upon the return of the order to show cause, the temporary injunction was vacated, and the plaintiffs have appealed.

We think the injunction was properly vacated.   The wall in question, so far as defendant Williams is concerned, is not, in fact, a party wall.   When he purchased, the agreement of 1867 between Chamberlain and Phelps and Brower had not been recorded, and there is nothing in the record before us to show that he had any knowledge, either actual or constructive, of its existence.   The wall had never been used by the plaintiffs or their predecessors in interest, and the defendant therefore had a right to assume, under such circumstances, that it was not a party wall, but was one of the walls of his building, which had, through ignorance or a misconception as to the location of the true line of the lots, been partially built upon the adjoining land of another.

Further, the damages which would be sustained by the defendant Williams if the injunction were to continue during the pendency of the action would be so much in excess of any possible damage which the plaintiffs might suffer by reason of the removal of the wall that the court was amply justified in refusing to exercise the discretion which it had to continue the injunction.   It was made to appear that the defendant was proceeding to erect upon his lot a building at a cost of $150,000, and had entered into a written contract by which he had leased such building for a period of 10 years commencing on the 1st of December, 1899, at an annual rental of $17,000 per year, and had covenanted that the building should be ready for occupancy by that time.   It can readily be seen that the damages sustained by him, if the injunction were continued, would probably be largely in excess of any possible damage that the plaintiff would sustain by the tearing down of the old wall, and the court properly refused upon this account to continue the injunction.   It is only in clear cases that this power is exercised.   The general rule is that an injunction pendente lite will do greater damage or create greater injury to the defendant to grant it than to the plaintiff to refuse it.   People v. Canal Board of New York, 55 N. Y. 390; Morgan v. City of Binghamton, 102 N. Y. 500, 7 N. E. 424.

The order is right, and should be affirmed, with costs.   All concur.