(114 App. Div. 216.)

RICHMAN v. CONSOLIDATED GAS CO. OF NEW YORK.

(Supreme Court, Appellate Division, First Department. June 20, 1906.)

1. CONSTITUTIONAL LAW—OBLIGATION OF CONTRACTS—DUE PROCESS OF LAW—REGULATING PRICE OF GAS—VALIDITY.

An act regulating the price that a gas company may charge consumers is not unconstitutional, as impairing the right of contract, and taking property without due process of law, in violation of Const. U. S. art. 1, § 10, and the fourteenth amendment thereto, provided the rate prescribed is not so low as to deprive the stockholders of the company of a right to a reasonable profit on the actual value of its plant and property.

[Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Constitutional Law, §§ 380–385.]

2. SAME—EVIDENCE—FACTS DEHORS RECORD.

In cases involving the validity of such a statute, the courts may examine facts dehors the record, and annul the action of the Legislature on a finding that the rate prescribed impairs such constitutional right of the stockholders.

[Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Constitutional Law, § 42.]

3. SAME.

Where a statute fixing the maximum rates for gas was attacked by the gas company as unconstitutional, the consumers were entitled to a continuance of the service on payment of the rates so prescribed, until determination of the constitutional question; the constitutionality of the statute being presumed until a judicial determination to the contrary.

[Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Constitutional Law, §§ 46, 47.]

4. MANDAMUS—ACTS OF CORPORATIONS—GAS COMPANIES—RATES.

The duty of a gas company to furnish consumers with gas at the rate prescribed by the Legislature may be enforced by mandamus.

[Ed. Note.—For cases in point, see vol. 33, Cent. Dig. Mandamus, § 269.]

5. JUDGMENT—PERSONS CONCLUDED—MUNICIPALITY AND CITIZENS.

In an action in the federal court by a gas company to have adjudged that Laws 1905, p. 2092, c. 737, creating the commission of gas and electricity, and the order of the commissioners thereunder in fixing the rate to be charged consumers for gas, and Laws 1906, c. 125, fixing a like rate, and Laws 1905, p. 2091, c. 736, fixing a lower rate to be charged

100 N.Y.S.—6

the city of New York, were unconstitutional, an adjudication against the city would be neither res adjudicata nor stare decisis as against private consumers not parties to the bill.

**6. SAME.**

The action of the commission, having been superseded by said Laws 1906, c. 125, which contained no reference to such action, and hence could not be presumed to be based thereon, members of the commission could not represent private consumers in a suit involving the validity of the statute.

**7. SAME—PERSONS REPRESENTED BY PARTIES.**

Laws 1906, c. 125, § 3, prescribes a penalty against any corporation charging in the city of New York a higher rate for gas than that prescribed in such chapter. Code Civ. Proc. § 1962, makes it the duty of the Attorney General and of the District Attorney to bring actions to collect penalties incurred for violating statutes. Held, that the District Attorney and the Attorney General having been made parties to a bill in the federal court by a gas company, in order to restrain them from bringing actions against defendant company to recover penalties for violation of the statute, plaintiff, in an action in the state court to restrain the company from cutting off his connections for failure to pay a rate in excess of the statutory one, was not a party to such bill, and no party thereto was authorized to represent him.

**8. INJUNCTION—RESTRAINING ORDER—OPERATION—PERSONS CONCLUDED.**

An order in such action in the federal court temporarily restrained the defendants, "their officers, agents, servants, and employés, and each and every person acting under and by virtue of the authority of the acts and order referred to in the bill of complaint, or any of them," from in any way enforcing the said acts and order or any of the provisions thereof against the complainant. With a view to preserving the right of complainant to charge the rate claimed by it in the event that the rate prescribed should be annulled, the order provided that complainant might present bills to its consumers at the old rate, securing those paying such bills the return of the excess in the event that the statutes complained of should be sustained, by a provision requiring complainant to pay into court a sufficient sum, and the extra charge to be thus impounded until the final decision. Held, that the order did not operate on private consumers not parties to the bill.

**9. COURTS—JURISDICTION—EXTENT—HOW DETERMINED.**

A bill in equity filed in the federal court and the issue of process thereon, and not the opinion or order of the court, determines the extent of the jurisdiction acquired.

[Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Courts, §§ 152–156, 818.]

**10. SAME—CONFLICTING JURISDICTION—FEDERAL AND STATE COURTS.**

One not a party to a bill in equity in the federal court may apply to any court of competent jurisdiction for the enforcement of his private rights, even though they be the same as those involved in the suit first brought in the federal court.

**11. SAME—ACTION IN REM.**

A suit brought in a federal court by a gas company to restrain the collection of the penalty prescribed for violating a statute regulating the price to be charged for gas in the city of New York is not in the nature of an action in rem, on the ground that the difference between the rate prescribed by the statute and the old rate was part of the res, so as to give the federal court exclusive jurisdiction over it, and preclude a private consumer, who had not paid the excess rate demanded by the company, from bringing an action in the state court to restrain the company from cutting off gas connections, or collecting charges for gas furnished at a higher rate than that prescribed by the statute.

[Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Courts, §§ 1345–1347.]

12. SAME—POSSESSION OF RES—CO-ORDINATE JURISDICTION.

    The possession of the res vests the court first acquiring jurisdiction with power to hear and determine all controversies relating thereto, and for the time being disables other courts of co-ordinate jurisdiction from exercising a like power.

13. SAME.

    The fact that the principal questions presented for decision in a bill in the federal court by a gas company to restrain the collection of penalties imposed for charging a higher rate for gas in the city of New York than that prescribed by statute may be the same as those in an action in a state court by a private consumer to restrain the gas company from cutting off gas connections until payment of the rate charged by it in excess of the statutory one, and that by reason thereof a final decision of the federal Supreme Court on appeal taken direct from the decision in the Circuit Court may be first had, is not ground for the state court to refuse jurisdiction.

    McLaughlin and Houghton, JJ., dissenting.

Appeal from Special Term, New York County.

Application by Jacob Richman for an injunction against the Consolidated Gas Company of New York, restraining it from discontinuing to supply plaintiff with gas, etc. From an order denying his motion to continue pendente lite an injunction order, plaintiff appeals. Reversed.

Argued before O'BRIEN, P. J., and McLAUGHLIN, PATTERSON, LAUGHLIN, and HOUGHTON, JJ.

Clarence J. Shearn, for appellant.

John F. Dillon and John A. Garver, for respondent.

LAUGHLIN, J.   The defendant is a corporation organized and existing under the laws of the state of New York, and is engaged in the business of manufacturing gas, and conducting and supplying the same through mains and lateral pipes to consumers in the city of New York for hire. The plaintiff conducts a coffee and lunch room in the building known as No. 484 Sixth avenue in said city, and for the successful conduct of his business requires light, heat, and fuel. The defendant has a main in the avenue, which is connected with the premises occupied by the plaintiff, and it has for a long period of time supplied him with gas, which he has used for light, heat, and fuel, and he is wholly dependent upon the defendant therefor. Prior to the 1st day of May, 1906, the maximum price which the defendant was authorized to charge its consumers, excepting the city of New York, for gas supplied to them, was fixed at one dollar per 1,000 cubic feet by chapter 385, p. 315, of the Laws of 1897, which provided that that rate should take effect on and after the expiration of the year 1900; the rate prior thereto having been higher, but having been gradually reduced, pursuant to the provisions of said statute. The Legislature, at its annual session in 1905, through a committee, investigated the quality of gas furnished by the defendant to its consumers, and the reasonableness of the price charged therefor, and as a result of such legislative investigation, and after the failure of an attempt to enact a bill reducing the maximum price to be charged for gas, it enacted chapter 737, p. 2092, of the Laws of that year, which created a state commission of gas and electricity, and authorized such commission, among

other things, upon complaint being made as to the price of gas as therein provided, to investigate the same by public hearings, and to fix the maximum price to be charged for gas within the limits prescribed by law for the term of three years next ensuing. The act provided, among other things, that the order of the commission in fixing the price of gas might be enforced by mandamus, and that a person aggrieved by the action of the commission in fixing the price of gas might have a review by an appeal to the Appellate Division. Section 21, p. 2100, of the act provided that, if it should be alleged and established in an action brought for the collection of any charge for gas that a price had been demanded in excess of that fixed by the commission·or by statute in the municipality wherein the cause of action arose, such fact should be a complete defense to the action, and no recovery could be had therein. The commissioners of gas and electricity were duly appointed, and they duly qualified and organized under the act. Thereafter complaint was made to the commission of the price of gas charged by the defendant, which gave it jurisdiction under the act, assuming it to be valid, to investigate the complaint, and notice was accordingly given the defendant on the 8th day of November, 1905, of a public hearing on the question. After public hearings and inquiry concerning all the material facts, the commission on the 23d day of February, 1906, made an order providing that on and after the 1st day of May, 1906, the maximum price for gas to be charged by the defendant, excepting to the city of New York, should be 80 cents per 1,000 cubic feet. By the provisions of chapter 125 of the Laws of 1906, which became a law on the 3d day of April, and took effect on the 1st day of May, 1906, the Legislature prescribed, among other things, that a corporation furnishing or selling illuminating gas in the borough of Manhattan, city of New York, should not charge or receive for gas manufactured, furnished, or sold therein more then 80 cents per 1,000 cubic feet. This is an independent act, and contains no reference to the action of the commission of gas and electricity in prescribing the same rate to take effect at the same time.

Notwithstanding the action of the state commission of gas and electricity and of the Legislature in reducing the price of gas to 80 cents per 1,000 cubic feet on and after the 1st day of May, 1906, the defendant has rendered a bill to the plaintiff for gas supplied after May 1, 1906, and has expressly charged him therein at the rate of one dollar per 1,000 cubic feet. The defendant has refused to accept payment duly offered in legal tender at the rate of .80 cents per 1,000 cubic feet, and has threatened to discontinue supplying the plaintiff with gas, and to cut off his supply and remove the meter, unless he pays the bill as presented at the old rate. The plaintiff has deposited with the defendant $10, the amount required by it pursuant to the provisions of section 66 of the transportation corporation law (chapter 566, p. 1148, of the Laws of 1890), as security for the payment of his gas bills, and has paid for all gas consumed prior to May 1, 1906, and has complied with all rules and regulations of the defendant, excepting its demand for one dollar per 1,000 cubic feet of gas supplied after said date.

On the facts here shown, it is the duty of the defendant, by virtue of the provisions of section 65 of the transportation corporation law (Laws 1890, p. 1148, c. 566), to supply gas to the plaintiff, provided it is not justified in exacting one dollar per 1,000 cubic feet for gas furnished after May 1, 1906. The defendant is exercising public franchises conferred by the people of the state through their Legislature, and is enjoying special privileges of using the public streets to serve the public, but for private gain. In thus exercising public franchises and special privileges, it owes a duty to the public to furnish gas to its consumers at reasonable rates, which the Legislature may regulate and the courts may enforce. It is competent for the Legislature to regulate the price that the defendant may charge consumers, provided it does not require it to supply gas at a rate that will not admit of a reasonable profit to the stockholders upon the actual value of the plant and property of the company. San Diego Land & Town Co. v. Jasper, 189 U. S. 442, 23 Sup. Ct. 591, 47 L. Ed. 892. The corporation may at any time have recourse to the state or federal courts to test the validity of any enactment of the Legislature prescribing or regulating the rate to be charged for gas, upon the ground that it is so low that it will deprive the stockholders of the right to such reasonable profit; and if, after a judicial investigation, the complaint should be sustained, it would be the duty of the court to declare the law unconstitutional and void, as impairing the right of contract, and taking property without due process of law, in violation of section 10 of article 1 of the federal Constitution and the fourteenth amendment thereto. This is one of the few cases in which the courts may examine facts dehors the record, and annul the action of the Legislature upon a finding that the rate prescribed impairs the constitutional right of the stockholders of the corporation to earn a reasonable profit on the value of the property employed in the business. Of course, if the statute itself should contain a recital that the Legislature had found on investigation that the actual cost to the company of supplying gas was greater than the price which it was permitted to charge consumers therefor, the invalidity of the law would appear upon its face without taking evidence. A statute, however, is presumed to be valid until its invalidity is adjudged by a court of competent jurisdiction.

The defendant challenges the validity of the statute appointing the commission of gas and electricity, the action of that commission in prescribing the 80 cent rate, and chapter 125 of the Laws of 1906, prescribing a like rate, upon the ground that they violate the provisions of the federal Constitution cited, in that the rate prescribed does not permit the stockholders of the company to earn a reasonable profit on the value of the property employed by the company in the business of manufacturing, conducting, and supplying gas to consumers. Both the Legislature and the state commission of gas and electricity appear to have acted with due deliberation, and after careful investigation of the essential facts. The gas company shows that the actual cost to the company of supplying gas to its consumers during the present year will be about 67 cents per 1,000 cubic feet, and that it is essential for it to reserve at least 3 cents per 1,000 cubic feet for maintenance of its plant, making a total cost to the company of 70 cents per 1,000 cubic

feet, and leaving 10 cents per 1,000 cubic feet, at the 80 cent rate, as profits, which will make a probable profit for the year of $1,330,000; which, however, upon its theory of the case, will only admit of a profit of 1½ per cent. to its stockholders. The commission of gas and electricity reached the conclusion, as shown by their order, that the 80 cent rate would admit of a profit to the stockholders of the defendant of 8 per cent. These controverted questions of fact apparently arise from a difference of view with respect to the law concerning the items that are to be taken into the account in ascertaining the actual value of the property of the company upon which its stockholders are entitled to a reasonable profit. It is manifest, however, that this question of fact, upon which the validity of the law depends, can only be determined upon a hearing on the merits, and that in the meantime there is no ground for assuming that the law is unconstitutional. It is a general rule of law that until a judicial determination upon a final hearing, a statute is presumed to be valid, and, although its enforcement may be temporarily enjoined, its operation cannot be suspended. The practical effect of the rule is that, until the statute is adjudged to be unconstitutional by a court of competent jurisdiction, the legal rate which consumers are required to pay, and upon payment of which they are entitled to a continuance of the service, is that prescribed by the last enactment of the Legislature, pending the decision of the question as to the constitutionality of the statute. Therefore, the company should not be permitted to coerce the consumers into paying the old rate. Consumers who do not wish to incur the annoyance, expense, or hazard of litigation, and are able so to do, may pay the old rate under protest, upon threat of the company to discontinue the service; thus reserving the right to recover back the excess in the event that the statute is held to be valid, and they will be fully protected by the wise provision made for them in the recent order of the Circuit Court of the United States, which will be considered presently. Those, however, who, like the plaintiff, wish to stand upon and apply to the court for the present enforcement of their rights, and to incur the expense and hazard of litigation, and give an undertaking to indemnify the defendant against loss sustained thereby, may secure the right to a continuance of the service pending the decision as to the constitutionality of the statute, upon tendering payment at the new rate, remaining liable for the difference between that and the old rate should the statute be held invalid. The company, if it wishes to risk the penalties under the statute, which very likely cannot be collected (Cotting v. Kansas City Stockyards Company, 183 U. S. 79, 22 Sup. Ct. 30, 46 L. Ed. 92; Consolidated Gas Co. v. Julius M. Mayer et al. [U. S. Cir. Ct., S. D. N. Y., opinion by Lacombe, C. J., filed June, 1906] 146 Fed. 150), may demand payment of bills at the old rate, and thus preserve its right to recover the extra 20 cents per 1,000 cubic feet should the law be annulled; and it may bring actions at law to recover on its bills where payment at the old rate is refused, and in such actions test the validity of the statute.

. The plaintiff, however, invokes the aid of the court of general jurisdiction in his own state to protect him in the enjoyment of rights conferred upon him by the statutes of New York, and to enforce per-

formance of a duty owing to him by the defendant under the statutes of the state of its creation. The plaintiff stands upon his rights, on the theory that the statute is constitutional. He has tendered payment of his gas bill after May 1, 1906, at the new rate, which the defendant refused to accept. The defendant threatens to discontinue supplying the plaintiff with gas, and to remove the meter, and thus coerce him into paying according to the old rate, which, presumptively, has been abrogated by the new statute. The plaintiff has given an undertaking, as required by law, to indemnify the defendant against any damages it may sustain by being compelled to furnish him gas pending the final decision of the action, and he prays for an injunction prohibiting the defendant from discontinuing supplying him with gas. The duty being enjoined upon the defendant to supply the plaintiff with gas at the legal rate, and he having tendered payment therefor at the rate which is presumptively the legal rate, it is the duty of the defendant, by the express terms of the statute, to continue supplying the plaintiff with gas; and this is a duty which might be enforced by mandamus. Matter of McGrath, 56 Hun, 76, 9 N. Y. Supp. 168; People v. N. Y. C. & H. R. R. Co., 28 Hun, 543; People v. N. Y. L. E. & W. R. Co., 104 N. Y. 58, 9 N. E. 856, 58 Am. Rep. 484. Our Supreme Court has jurisdiction of the parties, and the case is one for cognizance by a court of equity according to the precedents in this jurisdiction. Sickles v. Manhattan Gaslight Co., 64 How. Prac. 33; Id., 66 How. Prac. 314; Cromwell v. Stephens, 2 Daly, 15; Van Nest Land & Improvement Co. v. N. Y. & Westchester Water Co., 7 App. Div. 295, 40 N. Y. Supp. 212. See, also, Jones v. Rochester Gas & Electric Co., 7 App. Div. 474, 39 N. Y. Supp. 1110.

According to the opinion of the learned judge who heard the motion at Special Term, the injunction was denied on account of the prior pendency of a bill in equity filed in the Circuit Court of the United States for the Southern District of New York by the defendant herein, as complainant, against the members of the state commission of gas and electricity, the Attorney General of the state, the District Attorney of the county of New York, and the city of New York; and upon this appeal the learned counsel for the gas company contend and urge with forceful arguments that the federal court has taken unto itself jurisdiction of the subject-matter of the action, and that the courts of this state are without jurisdiction, or should, upon grounds of comity, decline jurisdiction of the action. An examination of the bill in equity filed by the gas company in the federal court shows that the object of that action is to have it adjudged that chapter 737, p. 2092, of the Laws of 1905, creating the commission of gas and electricity, and the order of the commissioners thereunder in fixing the 80 cent rate, chapter 125 of the Laws of 1906, fixing the 80 cent rate, and chapter 736, p. 2091, of the Laws of 1905, fixing 75 cents per 1,000 cubic feet as the rate to be charged the city of New York, are illegal and void, upon the ground that they contravene the fourteenth amendment to the federal Constitution, and section 10 of article 1 thereof.

It is to be observed that no consumer of gas, excepting the city of New York, was made a party to the suit in the federal court. Of course, the city of New York does not represent the private consumers

of gas, and it cannot appear for them in the litigation in the federal court. Consequently, an adjudication against the city will not be res adjudicata as against the private consumers who are not parties to the bill, nor will it even be stare decisis. The city was made a party to the bill, with a view to having said chapter 736, p. 2091, of the Laws of 1905, which limits the charge to be made by the defendant for supplying the city with gas to 75 cents per 1,000 cubic feet, declared null and void, upon the same theory that it does not admit of a reasonable profit to the stockholders. It is manifest that a rate of 75 cents per 1,000 feet may be void upon that ground, and that a rate of 80 cents per 1,000, which is the rate prescribed for private consumers, may be valid. The members of the commission of gas and electricity were made parties with a view to having the statute creating the commission and their order fixing the 80 cent rate declared null and void. It may well be, as contended by the learned counsel for the respondent, that for the purpose of testing the validity of the action of the commissioners in fixing the 80 cent rate and the enforcement of the same it was sufficient to make the commissioners parties, and that they upon those questions represent the consumers, who are to be benefited by their acts. San Diego Co. v. Jasper, 189 U. S. 439, 23 Sup. Ct. 571, 47 L. Ed. 892. It is evident, however, that it is immaterial to the rights of the plaintiff whether the statute creating the commission of gas and electricity, or the order made by that commission, be valid or invalid. The action of the commission is superseded by the statute subsequently enacted by the Legislature, which, since it contains no reference to the action of the commissioners, cannot be presumed to be based thereon. On the question of the validity of chapter 125 of the Laws of 1906, therefore, it follows that the members of the state gas commission cannot represent the private consumers.

Section 3 of chapter 125 of the Laws of 1906 provides in effect, among other things, that any corporation which charges or receives in the city of New York for gas a higher rate than that therein prescribed shall forfeit to the people of the state the sum of $1,000 for each offense. Section 1962 of the Code of Civil Procedure makes it the duty of the Attorney General and of the District Attorney to bring actions to collect penalties forfeited to the people of the state for violations of statutes. The District Attorney and the Attorney General were made parties to the bill in equity in the Circuit Court of the United States with a view to restraining them from bringing actions against the defendant to recover the penalties prescribed by the statute in the event of its charging or receiving more than 80 cents per 1,000 cubic feet for gas supplied to private customers in the borough of Manhattan. It thus appears that the plaintiff is not a party to the bill in equity filed in the federal court, and that no party thereto is authorized to represent him. The jurisdiction of the Circuit Court was invoked for the protection of rights guarantied to the complainant therein (the defendant herein) by the federal Constitution, and the aid of the court of equity was sought upon the theory that a multiplicity of actions to enforce the penalties would be brought, and that it would suffer irreparable injury unless injunctive relief against the enforcement of the penalties were granted pending the decision of the

question upon the merits as to the validity of the provisions of the statute imposing the penalties and prescribing the 80 cent rate. The learned circuit judge issued a temporary restraining order, containing the following provisions:

"That, until the entry of an order upon the said motion, the defendants, and each of them, their officers, agents, servants, and employés, and each and every person acting under and by virtue of the authority of the acts and order referred to in the bill of complaint, or any of them, be and they hereby are enjoined and restrained from in any way enforcing or attempting to enforce the said acts and order, or any of the provisions thereof, against the complainant."

And with a view to preserving the right of the said complainant to collect the extra 20 cents per 1,000 cubic feet of gas, in the event that the 80 cent rate should be annulled, made provision in the order by which the gas company was permitted to present bills to its consumers at the old rate, and securing those paying such bills in the return of the excess in the event that the legislation complained of should be sustained by a provision requiring the company to pay into court a sufficient sum, and the extra 20 cents per 1,000 cubic feet, to be thus impounded until the final decision.

It is contended that the general language of the restraining order quoted operates upon the private consumers, who were not parties to the bill. I am of opinion that the order should not be so construed. It must be construed in the light of the fact that the private consumers were not parties to the bill, and that the court could not adjudicate their rights without their presence, and, therefore, an attempt to adjudicate rights of parties without giving them their day in court should not be imputed to the court. Moreover, the general language of the order is susceptible of the construction that it was intended to provide for changes in the personnel of the officials who are made parties to the bill, and who are by statute charged with the duty of enforcing the provisions of the acts. Furthermore, it appears very clearly by the opinion of the learned circuit judge—which, although it may not limit the order of the court, may very properly be considered upon the construction to be given to the order—that there was no intention to enjoin the private consumers from taking such steps with respect to the protection of their rights as they might be advised. Upon this point Judge Lacombe, in his opinion, says:

"In entering that order the court did not find, nor did it express, nor even intimate an opinion, that the action of the gas commission in fixing the price to be charged for gas at 80 cents per 1,000 cubic feet was confiscatory, nor that the act of the Legislature establishing the same price (chapter 125 of 1906) was in that respect unconstitutional and void. It did not undertake to abrogate or nullify that provision of the statute. As between the consumer and the manufacturer, it left the question as to what the former should pay to the latter precisely where it stood before. Any consumer who might be asked to pay the old rate was left by the order entirely free to decline to pay it, and to make a tender at the new rate for the gas he had consumed. Naturally so, because, except for the city of New York, whose situation is exceptional, the individual customer was not a party to the suit, and had not been served with process. In the case of a customer who upon demand chose to pay the old rate, the order provided that the company should not cover the twenty cents difference into its treasury, but should leave it impounded under the direction of the court, so as fully to insure its return

to the person paying the same in the event of the company's failing to succeed in its litigation. In the case of a consumer who chose to make tender at the new rate, and to stand upon whatever rights were secured to him by the action of the gas commission in fixing that rate, and by the action of the Legislature in establishing the same rate, the order left him entirely free and untrammeled to apply for such relief as the law afforded him in the event of the company's seeking to compel payment of the difference. It was not perceived when the order was made, nor is it perceived now, upon what theory this court could by any injunction restrain any individual who was not a defendant, and had never been served with process, from himself applying to an appropriate court, if he should conceive himself to be aggrieved. What relief he might obtain when he so applied would be for that court to determine when it heard his application. The order did, however, provide that the gas company might charge or demand payment at the old rate, and might collect at that rate from such as chose to pay; and it enjoined the defendants, who are public officers, and, as such, the proper persons to institute and prosecute the actions to enforce and recover certain statutory penalties, from in any way enforcing or attempting to enforce two acts of the Legislature and an order of the gas commission, or any of the provisions thereof, against the complainant, until it should have its day in court, upon such a case as it might be able to make, to question the constitutionality of that order and of those acts."

We agree with the contention of the learned counsel for the respondent that the bill in equity filed in the federal court and the issue of process thereon, and not the opinion or order of the court, determines the extent of the jurisdiction acquired. The rule, however, appears to be the same in the federal courts as in our own jurisdiction, that a person not a party to a bill in equity is at liberty to apply to any court of competent jurisdiction for the enforcement of his private rights, even if they be the same as those involved in the suit first brought in the federal court. Andrews et al. v. Smith et al. (C. C.) 5 Fed. 833; Liggett v. Glenn, 51 Fed. 381, 2 C. C. A. 286; Watson v. Jones, 13 Wall. (U. S.) 679, 20 L. Ed. 666.

I think the cases cited by the respondent as authority for the proposition that the decision of the federal court on a bill in equity which has been filed by the defendant therein will be controlling upon the private consumers who are not parties thereto are not analogous to the case at bar. Here a right personally asserted by the plaintiff and contested by the defendant has given rise to an immediate controversy, which the plaintiff must have a right to apply to some tribunal to adjudicate. He is not a party to the suit in the federal court, he could not have maintained this action in the federal court, for the reason that there is no diversity of citizenship, and upon his theory of the case, proceeding, as he is, upon the assumption that the legislation is constitutional, no federal question arises. He, as well as the defendant, is entitled to his day in court, and I know of no theory upon which he could, without the consent of the complainant in the action in the federal court, become a party thereto, and it is doubtful whether the rights here asserted could be adjudicated upon his affirmative application in that action, even if he did become a party defendant. Perhaps the complainant could have filed a bill against him, or might yet by a supplemental bill make him a party defendant. But this has not been done, and our Supreme Court has obtained jurisdiction over the parties and over the subject-matter of the controversy.

The cases relied upon by the respondent were cases in which the person held to be bound by an adjudication or injunction order, although not a party to the suit, either had no right or interest of his own upon which he could have applied for an adjudication by the court—as, for instance, cases where a person has proceeded in disregard of an injunction order by aiding and abetting others in violating it, but claiming no right in the premises, or an employé of a party enjoined, or where a decision has been made or an injunction issued against a public official in his official capacity, and his successor in office was proceeding in defiance thereof, or where a party derived his right or title through a party against whom the decision has been made or the injunction issued with knowledge of the pendency of the action, and the like.

Another theory advanced by the learned counsel for the respondent is that the suit in the federal court is in the nature of an action in rem, and that the difference between the new and the old rate of charges is part of the res; and therefore that the federal court has acquired exclusive jurisdiction over it. I think that theory is not tenable. Quite likely, if the plaintiff voluntarily paid the bill at the old rate, and the excess was impounded by the federal court, pursuant to the order to which reference has been made, and the plaintiff brought an action against the defendant to recover it back, upon the theory that it had been paid under duress, the extra 20 per cent. would be held to be the res, the disposition of which was within the exclusive jurisdiction of the federal court. But in the case at bar the plaintiff has not paid the excess rate demanded, and there is no fund or property in which he is interested in the possession of the federal court, or which he seeks to recover in this action.

I am unable to discern any theory upon which either the decisions or orders of the state and federal courts in the bill in equity filed by. the defendant and in this action will conflict. The rule that a court first obtained jurisdiction over property may retain the possession of the property, and exercise exclusive jurisdiction over it for the purposes of the suit, to the exclusion of all other courts, is founded upon necessity, and to prevent an unseemly clash of jurisdictions. The rule is well stated in Farmers' Loan, etc., Co. v. Lake Street R. R. Co., 177 U. S. 51, 20 Sup. Ct. 564, 44 L. Ed. 667, as follows:

"As between the immediate parties in a proceeding in rem, jurisdiction must be regarded as attaching when the bill is filed and process has issued, and where, as was the case here, the process is subsequently duly served, in accordance with the rules of practice of the court. The defendants could not defeat jurisdiction thus acquired, and supplant the case, by bringing suit in another court, and procuring an ex parte injunction to restrain the service of process already issued. As, then, the bill of foreclosure had been filed in the Circuit Court of the United States, and the jurisdiction of that court has thus attached before the commencement of the suit in the state court, it follows, upon principle and authority, that it was not competent for the state court to interfere, by injunction or otherwise, with the proceedings in the federal court. The possession of the res vests the court which has first acquired jurisdiction with the power to hear and determine all controversies relating thereto, and for the time being disables other courts of co-ordinate jurisdiction from exercising a like power. This rule is essential to the orderly administration of justice, and to prevent unseemly conflicts between

courts whose jurisdiction embraces the same subjects and persons. Nor is this rule restricted in its application to cases where property has been actually seized under judicial process before a second suit is instituted in another court, but it often applies as well where suits are brought to enforce liens against specific property, to marshal assets, administer trusts, to liquidate insolvent estates, and in suits of a similar nature where, in the progress of the litigation, the court may be compelled to assume the possession and control of the property to be affected. The rule has been declared to be of especial importance in its application to federal and state courts. Peck v. Jenness, 7 How. (U. S.) 612, 12 L. Ed. 841; Freeman v. Howe, 24 How. (U. S.) 450, 16 L. Ed. 749; Moran v. Sturges, 154 U. S. 256, 14 Sup. Ct. 1019, 38 L. Ed. 981; Central Bank v. Stevens, 169 U. S. 432, 18 Sup. Ct. 403, 42 L. Ed. 807; Harkrader v. Wadley, 172 U. S. 148, 19 Sup. Ct. 119, 43 L. Ed. 399."

In all such cases, however, the rule is well settled that any party aggrieved, whether sued or not, may obtain relief by an application to the court which has taken possession of the res. Covell v. Heiman, 111 U. S. 176, 4 Sup. Ct. 355, 28 L. Ed. 390.

In Buck v. Colbath, 3 Wall. (U. S.) 334, 18 L. Ed. 257, this rule is well illustrated. It was there held that while a state court could not interfere with the possession of property by a marshal under process of the federal court, the state court may entertain jurisdiction of an action brought against the marshal for trespass in taking property of a person not a party to the suit, the process of the court running against the party only; and this notwithstanding the fact that the party whose property was taken might have had relief by an ancillary application to the federal court. The court say:

"It is not true that a court, having obtained jurisdiction of the subject-matter of the suit and of the parties before it, thereby excludes all other courts from the right to adjudicate upon other matters having a very close connection with those before the court, and in some instances requiring a decision of the same questions exactly."

This rule, however, has no application to a mere controversy even between the same parties. It is well settled that an ordinary action in the state court is no bar to an action for the same relief subsequently brought in the federal court, even where the parties are the same. Stanton v. Embrey, Adm'r, 93 U. S. 554, 23 L. Ed. 983.

The distinction depending upon whether there is a res involved in the suit, which has been or in the course of the litigation may be, taken possession of by the court first acquiring jurisdiction, is well stated in Ball v. Tompkins (C. C.) 41 Fed. 486, cited by the learned counsel for the appellant, and from which we quote:

"And this brings us to the pivotal question in the present inquiry: What is the nature and character of the possession of the state or federal court, which excludes the exercise of authority over the subject or thing by the other? From the authorities on this subject, which in the circuit courts are not altogether harmonious, and from the reasons for the rule, I apprehend it to be, substantially, that the possession contemplated as sufficient to make it exclusive is that which the court by its process, or some equivalent mode, has, either for the direct purpose of the proceeding or for some other purpose ancillary to the main object, drawn into its dominion and custody some thing. That thing may be corporeal or incorporeal—a substance or a mere right. But a controversy, a question, an inquiry, is not such a thing. These may be the subject-matter of jurisdiction in a pending cause, which often proceeds, from the beginning to the judgment, without the court's having taken actual dominion of anything. But there is no exclusive jurisdiction over such a matter.

The result may be a judgment which will establish a right, but the court has not had any possession. The pendency of the controversy in a suit in a state or federal court is no bar to a suit in the other court involving the same controversy (Stanton v. Embrey, Adm'r, 93 U. S. 548, 23 L. Ed. 983) and each will proceed, in its own course, to a judgment establishing the right. The control which each court has over its own processes has always been found adequate to prevent mischief from diverse judgments in the several jurisdictions. But in proceeding on its way whenever either court finds that the other has already taken actual dominion over some objective thing related to the subject, it will let the thing alone, so long as that dominion is retained, and proceed, if there be enough material besides to support the exercise of its jurisdiction, and the pursuit may reach fruit. If not, it will stop. There are many cases in the Supreme Court Reports where this subject has been discussed and these principles applied. Some of them have been already cited. Others are Heidritter v. Oilcloth Co., 112 U. S. 294, 5 Sup. Ct. 135, 28 L. Ed. 729; Railroad Co. v. Vinet, 132 U. S. 478, 10 Sup. Ct. 155, 33 L. Ed. 400."

The defendant in its suit in equity in the federal court prays for relief, among other things, as follows:

"Your orator further prays that if, at any time hereafter and prior to the final hearing hereof, any consumers of gas or other customer of your orator, or any other person, association, or corporation in the city of New York, shall attempt to enforce the provisions of the said acts and order, or otherwise act or proceed thereunder, such persons, or some of them on behalf of all, be made parties defendant hereto, and each of them be enjoined and restrained, as heretofore prayed, and that your orator have such other and further relief as to the court may seem meet and the nature of the case may require."

It may be that, under this prayer for relief, the federal court may by supplemental bill make private consumers of gas parties to the suit; but this court having first obtained jurisdiction of the controversy so far as it relates to the rights of the plaintiff, it will not be competent for the federal court to take jurisdiction over the plaintiff in such manner as to interfere with any order or decision that may be made by this court. Pitt et al. v. Rodgers, 104 Fed. 387, 43 C. C. A. 600.

It is true that the principal questions presented for decision will be the same in this action as in the suit in the federal court, and it may be that, owing to the fact that an appeal may be taken direct to the Supreme Court of the United States from the decision of the Circuit Court, a final decision by the federal Supreme Court may be first had in the suit pending in the federal court. But that is no ground for this court to refuse jurisdiction.

The decisions of the respective courts will be binding only upon the parties to the respective suits. They will be stare decisis on the questions of law as to third parties, but not res adjudicata. If our court and the Circuit Court of the United States should not take the same view of the law, the Supreme Court of the United States, if appealed to, will ultimately reconcile the decisions.

The importance of the interesting questions presented by this appeal, and very ably argued at the bar, and learnedly discussed on the points, merits more extended consideration; but it is deemed advisable, especially since the views of all the members of the court are not in harmony, to render an immediate decision, to the end that the respondent may, if so advised, obtain a review by the Court of Appeals before the summer vacation.

It follows, therefore, that the order should be reversed, with $10

costs and disbursements, and the injunction order granted, with $10 costs.

O'BRIEN, P. J., and PATTERSON, J., concur.

O'BRIEN, P. J. (concurring). Upon the argument it was made clear that neither side desired that the main question should be obscured by any subsidiary or incidental one relating to the form in which the question itself was presented; in other words, the defendant has forcefully and ably contended through its counsel that this court should not take jurisdiction of the action, or make any order therein, because, as claimed, the federal court, by the filing of a bill of complaint by the company, had acquired exclusive jurisdiction over the subject-matter. We think the question, therefore, should be considered upon its merits, and that, if the contention of the company is right, we should proceed no further; but that if, on the other hand, it should not be sustained, then the relief which the plaintiff seeks by way of injunction should be granted. In passing, it should be noted with reference to the exercise of discretion, upon which much stress is placed by Mr. Justice McLAUGHLIN, that the discretion is not that of a single judge, but is the discretion to be exercised by the Supreme Court, of which this Appellate Division is an integral part. So, too, with respect to the amount of proof required to sustain the right to an injunction, there was no serious contention that the plaintiff's papers were insufficient to present the claim that gas should be charged for at the new rate; reliance being placed, and properly, upon the fact that this was the legal rate. And the effort of the defendant by affidavits to show that it was an unjust and confiscatory rate was proper, in view of the burden placed upon it in attacking the validity of the act, and with a view to overcoming the presumption which arises from the act itself that the price fixed by the statute is a proper one, which presumption continues until upon the trial it is overcome. Eliminating these considerations, which have no important bearing upon the main question, which relates to the jurisdiction of the court to entertain the action, but a few words need be added to what has been said by Mr. Justice LAUGHLIN in his opinion, in which I concur.

As I summarize the views of my associates, we are all agreed that the Supreme Court has jurisdiction to entertain the present action, not-withstanding the pendency of another suit brought by this defendant against different parties in the federal court. It is suggested, however, that, apart from the question of jurisdiction, and assuming that the Supreme Court has it, under the rule of comity it should not be exercised. This involves a consideration of the rule of comity and the reasons upon which it is based; and in view of the very able discussion of this subject in Ball v. Tompkins (C. C.) 41 Fed. 486, quoted from in the opinion of Mr. Justice LAUGHLIN, any extended discussion of the rule or the reason for it is unnecessary As therein said, whether this rule of comity will be applied or not depends upon whether the court first taking jurisdiction of the subject-matter has, by its process, or some equivalent mode, "drawn into its dominion and custody something"; and, "a controversy, a question, an inquiry, is not such a

thing. These may be the subject-matter of jurisdiction in a pending cause, * * * without the court's having taken dominion of anything. But there is no exclusive jurisdiction over such a matter. The result may be a judgment which will establish a right, but the court has not had any possession." Applying this rule, it is evident that in the suit in the federal court what is there involved is the constitutionality of the gas statute, and it is but confusing the subject to suggest that the money which has been and will be deposited as a condition for granting of the injunction is the subject-matter involved in that litigation. This, I think, is made clearer if we assume that, instead of requiring the company to deposit the money, it had been required, as a condition for the issuance of the injunction, to give a bond; and in that event I do not think it would be seriously contended that the bond and a recovery upon it would be the subject-matter of the controversy.

Mr. Justice McLAUGHLIN puts much stress upon the terms of the order of Judge Lacombe, and, standing alone, there would be much force in the contention that not only was it intended to permit the company, without being subject to the penalties, to proceed with the litigation, but also that it gave the company the right to collect from consumers at the old rate. I take it, however, to be the well-settled rule that it is the right of every court to determine the meaning of the language used, and to construe the terms of its own order; and the meaning or construction thus given (and for this purpose resort may be had to the opinion) by the court making the order is conclusive on any other tribunal. We have the order construed by Judge Lacombe himself; he stating that it was not intended to do more than permit those who voluntarily made payment at the old rate to do so and be protected in their right, if the contention of the gas company were not sustained, to obtain a return of the excess of payment. Under the construction, therefore, of Judge Lacombe's order as given by him, the controversy as between the consumer and the company was left to be determined in such forum as that question might arise; and under those circumstances I fail to find anything in the rule or the reason for the rule of comity which should prevent our court from exercising jurisdiction in a proper case. If, as pointed out by Mr. Justice LAUGHLIN, instead of taking advantage of the terms of the order of the federal court, which will fully protect any one who voluntarily pays at the old rate, a consumer prefers to bring an action in our court, he will be required to give a proper undertaking, which will fully protect the company in the event that it should be finally successful in its contention.

LAUGHLIN, J., concurs.

McLAUGHLIN, J. (dissenting). In the main I do not disagree with Mr. Justice LAUGHLIN as to the principles of law stated in his opinion, but I do not agree with him as to their application to the question here presented. The defendant has, and on the 25th of May last, when it presented its bill to the plaintiff, had, nearly 400,000 consumers of gas in the city of New York, to whom it was its custom to

render bills every month. In pursuance of this custom, it rendered a bill to the plaintiff on the 25th of May for gas furnished to him between the 1st and 19th of that month, charging him at the rate of one dollar for every 1,000 cubic feet of gas consumed, which amounted to $23.20. He refused to pay the bill upon the ground that the defendant, under chapter 125 of the Laws of 1906 of the state of New York, could only charge him 80 cents per 1,000 cubic feet of gas consumed, which amounted to $18.56, which sum he offered to pay and defendant refused to accept. Defendant then sought to enforce collection by threatening to cut off the further supply of gas. Section 68, c. 566, p. 1149, of the Laws of 1890. Thereupon the plaintiff brought this action to procure a judgment restraining the defendant from cutting off his supply of gas, and from interfering with or removing from his premises the gas meter or other appliances for the supply of gas, upon the ground that it could only legally charge him, under the act above referred to, 80 cents for each 1,000 cubic feet. Upon the summons and complaint the plaintiff obtained a temporary injunction, pending the return of an order to show cause why the same should not be continued during the continuance of the action, restraining the defendant from cutting off, or in any way interfering with, the plaintiff's supply of gas. Upon the return of this order defendant presented proof, which was not contradicted, which tended to establish that 80 cents per 1,000 cubic feet was not a reasonable price, for which reason the act of the Legislature requiring it to furnish gas at such price amounted to a confiscation of its property, and therefore is unconstitutional, and that it had, prior to the commencement of this action, filed a bill in the Circuit Court of the United States for the purpose of testing the validity of such act. The court refused to continue the injunction, and the plaintiff has appealed.

This order is about to be reversed, and the injunction granted, notwithstanding numerous decisions of this court to the effect that the granting of an injunction pendente lite rests in the discretion of the Special Term, whose order will not be reversed unless the discretion has been abused (City of Gloversville v. J. G. & K. H. Ry. [Sup.] 21 N. Y. Supp. 146; Pratt v. N. Y. C. & H. R. R. Co., 90 Hun, 83, 35 N. Y. Supp. 557), and that a preliminary injunction is not granted "except in a very clear case" (McLoughlin v. Singer, 33 App. Div. 185, 53 N. Y. Supp. 342); also, that it will always be refused if to grant it will do greater damage to defendant than to plaintiff to refuse it (People v. Canal Board, 55 N. Y. 390; Morgan v. City of Binghamton, 102 N. Y. 500, 7 N. E. 424; Brower v. Williams, 44 App. Div. 337, 60 N. Y. Supp. 716; St. Regis Paper Co. v. Santa Clara Co., 55 App. Div. 225, 67 N. Y. Supp. 149); and where serious injury would be done defendant, and only slight relief afforded plaintiff (Riedeman v. Mt. Morris Electric Light Co., 56 App. Div. 23, 67 N. Y. Supp. 391). The discretion exercised by the Special Term in refusing to continue the injunction cannot, in view of our own decisions, when the facts are considered, be said to have been abused.

The defendant, as already indicated, has nearly 400,000 different consumers of gas, and when chapter 125, p. 235, of the Laws of 1906, became a law (which prohibited it from charging more than 80 cents for each 1,000 cubic feet of gas furnished, and imposed a penalty of

$1,000 for each and every violation of the act) it was confronted with a very serious situation. If, as it contends, this was less than the cost, or such charge did not afford an adequate return on the capital invested in its business, then the act, in effect, amounted to a confiscation of its property in a manner prohibited by section 10 of article 1 of the federal Constitution and the fourteenth amendment thereof; and yet, if it undertook to collect a sum in excess of the amount specified in the statute, by monthly bills (the method theretofore employed by it), it would incur monthly penalties of nearly $400,000,000, and before any final determination could be obtained in the Supreme Court of the United States render it a bankrupt.

Taking into consideration the situation which was presented and the tremendous consequences which would follow if it treated the act of 1906 of the Legislature of the state as invalid, it did, as it seems to me, the only reasonable and proper thing to do—brought a suit in the United States Circuit Court for the purpose of determining the validity of such act. It had a right to file its bill in that court for the purpose of having the validity of the act of the Legislature determined. Chicago Ry. Co. v. Minnesota, 134 U. S. 418, 10 Sup. Ct. 702, 33 L. Ed. 970. That court, as indicated in the opinion of Judge Lacombe (referred to in the opinion of Judge LAUGHLIN), was the "appropriate forum," because through a suit brought there a final and ultimate decision could be determined by the United States Supreme Court quicker than in any other way. It is important that the question should be finally settled by the court of last resort, and from the judgment or decree rendered in the Circuit Court an appeal can be taken direct to the Supreme Court of the United States, whereas in this action an appeal must be taken from the judgment rendered therein first to the Appellate Division of the Supreme Court of the state of New York; then to our Court of Appeals, and from its determination to the Supreme Court of the United States, and obviously a determination could not be reached in this way as speedily as it could in the other. In the bill filed in the federal court appropriate facts are set out which will raise every question which can be determined in this action. In that suit an order has been entered which permits the gas company to "make the same charge for gas furnished since April 30, 1906, to its consumers, other than the defendant the city of New York, as that which it had heretofore made, viz., one dollar per thousand cubic feet," notwithstanding the provisions of chapter 125 of the Laws of 1906; but a provision is inserted in it to the effect that, as a condition of the gas company's charging this rate, it must forthwith pay to a bank designated a sum estimated to represent 20 cents per 1,000 cubic feet for all gas furnished during the month of May, 1906, such estimated sum to be 20 per cent. of the amount received for the gas furnished by defendant to its consumers during the month of May, 1905, and that thereafter it must pay, in the manner provided in the order, 20 per cent. of its receipts for gas furnished to its customers. The defendant has complied with the order in so far as it directed it to forthwith pay into court a sum estimated to represent 20 cents per 1,000 cubic feet for all gas furnished for the month of May, 1906, by actually paying to the bank designated $204,531.58. The order directing this payment was

made on the 18th of May, and it was complied with prior to the 25th of May—the day when the bill of which complaint is made was presented to the plaintiff in this action. There had then actually been deposited in court for his benefit a sum which, if the act in question were declared valid, would insure to him a return of the amount which he claimed he was not liable to pay. Under such circumstances, I do not think it can be said that the court abused its discretion in refusing to grant a temporary injunction.

On the merits the injunction ought not to be granted. As indicated, every question which can be determined in this action will necessarily have to be determined in the suit brought in the federal court. It is a general rule of comity that where two courts have concurrent jurisdiction, the one first acquiring the same shall retain it, to the exclusion of the other. Peck v. Jenness, 7 How. (U. S.) 612, 12 L. Ed. 841; Johnstown Mining Co. v. Butte & Boston Co., 60 App. Div. 344, 70 N. Y. Supp. 257. The federal court acquired jurisdiction by the filing of the bill. Heidritter v. Elizabeth Oilcloth Co., 112 U. S. 294, 5 Sup. Ct. 135, 28 L. Ed. 729. The decision there made, if ultimately affirmed by the Supreme Court of the United States, will be binding upon the courts of this state, and therefore will determine the rights of this plaintiff. It is true our Supreme Court has jurisdiction of the parties and the subject-matter of the action. It is equally true that the judgment or decree in the federal court will not be res adjudicata as to this plaintiff. But these are insufficient reasons, under the facts here presented, to justify our court in exercising its jurisdiction. It ought to refuse to entertain jurisdiction on the ground of comity and to prevent multiplicity of actions, to say nothing of the little benefit which will be conferred upon the plaintiff, and the great loss which the defendant may sustain by our so doing. It ought also to refuse to entertain jurisdiction on the ground that by so doing, and granting the injunction, it will, in effect, destroy the very object sought to be accomplished by the order made by Judge Lacombe in the suit brought in the federal court.

It is a somewhat alarming proposition that when a legislative body has, simply by its own fiat, arbitrarily fixed the price at which the owner of a product must sell it, a court will refuse to the owner of the product the right to sell it at the price at which he had theretofore sold it pending a judicial determination as to the validity of the legislative act, when sufficient money is paid into court to reimburse a purchaser for the difference in price in case the act is declared invalid.

I therefore vote to affirm the order appealed from (1) on the ground that the court did not abuse its discretion in refusing to continue it; and (2) on the ground that, the federal court having taken jurisdiction of the entire subject-matter of the litigation, our courts ought to refuse to entertain jurisdiction, at least to the extent of granting an injunction during the pendency of an action.

HOUGHTON, J. (dissenting). By the decision about to be made, an injunction is to be granted during the pendency of this action, upon the plaintiff's complaint alone, to which are opposed numerous affidavits of persons familiar with the cost of producing and distributing gas,

who testify that under the conditions existing in the city of New York gas cannot be made and sold to consumers at 80 cents per 1,000 cubic feet, and yield a fair return on the capital necessarily invested. All parties to this litigation concede that the Legislature has no power to fix a price which shall be paid for gas at less than cost and a fair return upon the investment, and that, if a price less than such cost and fair return should be so fixed, such action would be a confiscation of private property and unconstitutional.

The cost of production and distribution is a question of fact to be determined by evidence. Conceding that presumptively the price fixed by the Legislature is a proper one, and that the presumption is that the statute passed by it is constitutional, still these presumptions can be overthrown by evidence showing that the price fixed is below cost, and a fair return upon the money invested. If the defendant can prove satisfactorily in the present action that 80 cents per 1,000 cubic feet is below such cost, the plaintiff's complaint must be dismissed, because it will follow as a legal conclusion that the act of the Legislature fixing that price was unconstitutional. The defendant, by the affidavits submitted by it on the motion to continue the injunction during the pendency of the action, made prima facie proof that the price of 80 cents was below cost and a fair return upon the investment. These affidavits stand absolutely uncontradicted. In order that an injunction may be granted to the plaintiff, the presumption that the Legislature fixed a proper price, and that its act was constitutional, must be permitted to outweigh the positive proof which appears in the record. The presumption that the action of the Legislature was proper and constitutional is not a conclusive one, because it is subject to be overthrown by proof, and there is no rule of law which permits a presumption which is not conclusive to stand against positive evidence which overthrows it.

Injunctions are frequently granted pendente lite for the purpose of continuing the subject-matter of the litigation or the relations of the parties in the same situation until the controversy shall be finally determined upon the merits. Even under such circumstances, I know of no case where an injunction has been granted continuing the situation when the proof was all one way that it ought not to be so continued. In the present case the injunction changes the relations of the parties, and compels the defendant to accept 80 cents instead of one dollar per 1,000 cubic feet for its gas, when the only proof is that such change ought not to be made. Irrespective, therefore, of the question of the federal court having first acquired jurisdiction of the matter in controversy, I think the order denying the injunction should be affirmed, and I dissent from its reversal and the making of an order granting an injunction.

Conceding, which I think is the law, that the action in the federal court does not oust our state courts of jurisdiction, still, as matter of discretion, I think no extraordinary remedy in the form of a temporary injunction should be granted. The effect of the federal decision is to hold all parties in the position in which they now are until it can be determined on the merits what in fact is the cost of producing and distributing gas in the city of New York. The difference between the new price and the old remains in the custody of the court. If it shall

be finally determined that 80 cents is a fair price, the excess which each individual has paid will be returned to him. If it shall be determined that one dollar is the proper price, the individual has lost nothing, and the company has been saved from great loss and damage. While the federal court decision will not be absolutely binding on each customer, a determination by the Supreme Court of the United States that the action of the Legislature was constitutional or unconstitutional would be wholly effectual. It would be stare decisis, if not res adjudicata. Neither the company nor any consumer would be foolish enough to indulge in the hope that the state courts would not follow that decision. The broad question of the constitutionality of the act is squarely involved in the federal action, and cannot escape decision. Litigation in the state courts while that action is pending should not be encouraged; much less should the court exercise its discretion in granting the special remedy of injunctions during the pendency of actions brought by the consumers or by the companies.

I can see no ground which calls for or justifies a reversal of the order refusing the injunction.

<hr>

Clarence J. Shearn, for respondent.

