KINGS COUNTY LIGHTING COMPANY, Plaintiff, *v.* MERTON
E. LEWIS, as Attorney-General of the State of
New York, OSCAR S. STRAUS, TRAVIS H. WHITNEY,
CHARLES S. HERVEY, FREDERICK J. H. KRACKE and
CHARLES BULKLEY HUBBELL, Composing the Public
Service Commission of the First District of the State
of New York, and THE CITY OF NEW YORK,
Defendants.

(Supreme Court, New York Special Term, July, 1918.)

Injunctions — gas companies — modification of injunction authorizing
use of funds pending determination of constitutionality of chapter
125 of Laws 1906, as amended in 1916.

Where pending the determination of an action brought to
test the constitutionality of the statute (Laws of 1906, chap.
125, as amended by chapter 604 of the Laws of 1916), fixing
the maximum rate chargeable by the plaintiff company for gas
to consumers other than the city of New York, on the ground
that such rate is confiscatory, the plaintiff has been granted an
injunction enjoining defendants from enforcing or attempting
to enforce the penalty provisions of the statute and providing
that until the determination of the issue the plaintiff may, with-
out liability for such penalties, make the same charges for gas
to consumers other than the city as theretofore made and pay
into a designated bank from time to time on the first of each
month a certain portion of the amount collected from private
consumers, the same to be held as a special deposit bearing
interest at two and one-half per cent per annum and that " all
such moneys shall be held subject to the further order of the
court in this proceeding," and pursuant to such injunction
order there has been deposited an amount in excess of $250,000,
which is being continually increased by current monthly deposits,
the court has power to modify said order so as to relieve plain-
tiff from the obligation to make future deposits and allow it to
draw and have paid to it the amounts already deposited to
enable it to make payments for necessary extension of its plant,
provided that adequate and reasonable protection to consumers
be preserved.

Motion by the plaintiff company for such a modifi-. cation of an order granting it a temporary injunction pending the determination of the constitutionality of a legislative act fixing the maximum rate chargeable by the plaintiff company for gas as will permit it to withdraw without condition and use for the purpose of its business $265,000 collected from consumers and deposited with the Empire Trust Company to await the outcome of the action.  Motion granted on conditions.

George L. Ingraham and Samuel F. Moran, for motion.

William L. Ransom and Russell B. Burnside, for public service commission for the first district, in opposition.

John P. O'Brien and A. Judson Hyatt, for city of New York, in opposition.

Arthur P. Stern, for various consumers, in opposition.

Pendlton, J.   This is an action brought by the plaintiff, a public service corporation engaged in the business of supplying gas within certain territory in the borough of Brooklyn, against the attorney-general, the public service commission and the city of New York to enjoin the enforcement of the provisions of the act of the legislature known as chapter 604 of the Laws of 1916, amending chapter 125 of the Laws of 1906, reducing the price of gas in the territory served by plaintiff to consumers other than the city to. eighty cents per 1,000 cubic feet, on the ground that such rate of compensation is confiscatory and the act therefore unconstitutional.  A temporary injunction

*pendente lite* was granted by the court enjoining the defendants until the trial of the action from enforcing or attempting to enforce the penalty provisions of the act, which further provided that until the determination of the issues the plaintiff may, without liability for such penalties, make the same charges for gas to consumers other than the city of New York that it has heretofore made, namely, ninety-five cents per 1,000 cubic feet, and that it pay into the Empire Trust Company, from time to time, on the first of each month, fifteen cents per 1,000 cubic feet of the total amount collected from private consumers, the money so deposited to be held as a special deposit bearing interest at the rate of two and one-half per cent per annum, and that " all such moneys shall be held subject to the further order of the court in this proceeding." The order further provided that any party to the proceeding may apply to the court for its further direction in the premises. Under these provisions there has already been deposited in the Empire Trust Company by the plaintiff an amount in excess of $250,000, and this amount is being continually increased by the current monthly deposits. Plaintiff, by this application, seeks a modification of the above provisions by relieving it from the obligation to make future deposits, and to allow it to draw and have paid to it by the trust company the amounts already deposited, to enable it to make payments for necessary extensions of its plant and other requirements. The defendant public service commission has not filed any affidavits in opposition to the motion, but has submitted a proposed order, reference to which is hereafter made. The city of New York has appeared and filed affidavits in opposition to the motion, and certain private consumers have on application been allowed to intervene for the purposes of the motion and been heard and have filed

affidavits in opposition thereto. Both the city of New York and the intervening individual consumers, as preliminary objections to any modifications of the injunction order, strenuously insist that the court has no power to interfere with the money deposited with the trust company; that it is a fund belonging to the individual consumers, who, it is claimed, have paid these amounts, relying on the notice printed in the company's bills and the order requiring the deposit in the trust company, and that any interference therewith in this action, or in a proceeding such as this, to which the consumers are not parties, is violative of the due process clause of the Federal Constitution. The notice printed in the plaintiff's bills contains only the promise of the plaintiff company that in case of a decision sustaining the constitutionality of the act the difference between the old rate and the new will be refunded to the consumer by the company, and makes no reference whatsoever to the provision for the deposit with the trust company, and the order expressly reserves to the court the right to make future disposition of the funds deposited. The consumer had full notice of this reservation, and must be assumed, therefore, to have made the payments with that understanding. As legislative acts are presumed to be constitutional until the contrary is shown, it must be assumed the court in granting the injunction determined that plaintiff had made out a *prima facie* case. It would therefore have been entirely within the power of the court to grant the injunction without the provisions as to the deposit of money. It might have provided for a bond (*Richman v. Consolidated Gas Co.*, 114 App. Div. 216, 235) or otherwise protected the consumers, or as they were not parties to the suit and not bound by the injunction a bond even, as to them, was not strictly required. What the court had power to do then it

certainly has power to do now, so far as any future
payments are concerned, and as to the funds already
deposited the power to dispose of them was speci-
fically reserved in the order, which must be construed
to mean for a purpose consistent with the intent
to provide protection for the consumers.   It is,
moreover, very clear that the order of injunction
was effective directly and binding only on the parties
to the action, and individual consumers, not being par-
ties, are at liberty to take such action and pursue such
remedies as they may be entitled to as freely as if no
injunction had ever been granted.   They may stand on
their rights under the statute and demand that they
be furnished with gas at the legal rate, and if sued to
recover the old rate plead the statute as a defense, or,
if the company threatens to discontinue their service,
test the constitutionality of the law by bringing a suit
to enjoin it, and obtain a temporary injunction on
giving the usual undertaking on injunction, or pro-
ceed by mandamus, or they may pay the rate demanded
under protest and in the event of the act being held
constitutional compel a repayment of the excess paid
over the statutory rate.   Instead of either of these
courses they may pay the rate asked and rely for
repayment on the provisions of the injunction order.
*Richman* v. *Consolidated Gas Co.,* 114 App. Div. 216;
affd., 186 N. Y. 209.   If it be claimed that the money
paid to the trust company is in the nature of a fund
impounded for the benefit of the consumers who have
paid, any rights therein are in the nature of an interest
in the *res,* and the court in the injunction suit having
acquired    jurisdiction    thereof    its    determination
under the right of disposition reserved in the
order would be final and conclusive.   *Richman* v.
*Consolidated Gas Co.,* 114 App. Div. 216, 229, 230.
It is entirely obvious therefore, in any view of

11

the matter, that consumers who have paid the rate demanded, relying on the provisions of the order of injunction, acquired only the rights prescribed by its terms, in which are included the right reserved to the court to make future provisions for the disposition of funds paid into the trust company, and that, so far as the future is concerned, the consumers may, in case of a modification of the order, decide for themselves what course they will pursue, and either stand on their legal rights, as above pointed out, or make their payments and rely for a reimbursement on the provisions of the modified order. That the court has power to modify the terms of the injunction order seems therefore plain, provided adequate and reasonable protection to the consumers be preserved. The action was commenced and the injunction order granted some two years ago, and the trial is now proceeding before a referee appointed by the court to hear and determine the issues involved. Testimony has been taken, but the case has not been concluded and apparently will not be for some time to come. Plaintiff contends that owing to the shortage of coal last winter and other conditions largely brought about by the war, the demand on it for gas exceeded the capacity of its present plant, and there is reason to believe this demand next winter will in still greater degree outstrip its capacity and that proper precautions require at this time certain extensive improvements and additional facilities to enable it to properly supply the territory served by it, which will require the expenditure of large amounts on capital account; that there have been, furthermore, large increases in the costs of labor and supplies and that it is unable from its current receipts to meet these large disbursements required, both for operating expenses and improvements, and although it has been authorized by the public service commission to issue

its mortgage bonds for the purpose of raising money to defray the required capital investment in improvements and additions to its plant and facilities by reason of the present conditions of the money market, a sale of its bonds at this time, or borrowing money on them as collateral, could only be effected on very onerous terms as to the rate of interest or discount; that the material for the necessary additions and improvements has been ordered and the work is progressing and must be completed before the cold weather and the consequent large increase in the demands on plaintiff for gas, and that provision to meet these expenditures is now necessary, and that the only practicable means of so doing, and to enable it to meet the increased cost of manufacture, is to allow it to use the funds deposited or to be deposited with the trust company on some terms equitable and just to the consumers. As plaintiff serves gas to individual consumers, including the United States government, and for street and public lighting as well, it is quite apparent that a failure or inability on its part to supply the demand would work great damage and injury to individual consumers and the community at large, and that existing conditions are quite abnormal sufficiently appears by the papers submitted and is a matter of which the court can take judicial notice. In so far as plaintiff claims and seeks to show that its earnings on the basis of the statutory rate are not sufficient to meet its requirements, as to which some opposing affidavits have been submitted by the city, I think it would be quite inappropriate that the court at this time should assume to in any way forestall the decision of the main question to be determined at the trial, especially as obviously the result in the earnings of the company after the completed addition to its plant and the increase in supply of gas furnished must, in the nature

of the case, be speculative only, and, therefore, to allow the use of these funds for operating expenses would be entirely improper. So far as the motion looks to the use of the funds for providing the money required for the additions and improvements to the plant made necessary as above stated and properly chargeable to capital account, which would be provided for in ordinary times by the issue of the bonds authorized by the public service commission, a different question is presented. They have obviously been made necessary by circumstances which could not have been foreseen, and add to the value of the property back of the obligations of the company, including that of repaying the money deposited in the event the statute be declared constitutional. That these improvements are necessary appears by the papers and is supported by the fact also appearing that the public service commission, after an examination as to the condition of the company to make adequate provision to supply the demands to be made upon it, has not opposed the application so far as it relates to providing for such improvements and additions. That the usual methods of providing for capital expenditure by the issue of bonds are not now as available as normally, is, I think, also clear, as well as that it is not to the public interest that private corporations should be borrowers in the market at high interest rates to meet expenditures made necessary by the war, in competition with the United States government's offerings of government bonds. It is to the interest of the consumers and the public, as well as to the company, therefore, that such measure of relief should be granted as will enable these funds to be used to meet the unanticipated special situation, while at the same time properly safeguarding the interests of the consumers, and these, I think, can be fairly and adequately accomplished by allowing

the company to substitute its bonds for the funds deposited or to be deposited with the trust company. That these bonds are intrinsically a fair and adequate security and would be marketable under normal conditions fairly appears, and their value is increased by the use of the funds in adding to the plant. The balance sheet of the company submitted shows a large surplus over and above $2,000,000 of capital stock. The interest on the bonds has been paid, the public service commission has fixed the price of sale at in the neighborhood of par, and if the constitutionality of the act is sustained, which is the only contingency on which repayment to the consumers will be ordered, it will thereby be established that the earnings of the company will be sufficient to provide for the interest on its bonds. The order should provide that the moneys withdrawn shall be used solely for making the additions and improvements properly chargeable to capital account and specified in Exhibit H (this meets the criticism on this point of the city) or other similar improvements, and that bonds at par shall be deposited in the place and stead of the deposit already made or to be made; that the interest thereon shall be paid to the trust company and held with the bonds, subject to the further order of the court, and that all funds of the company should be applied to the purposes of its business and not to dividends on the stock until the question of the repayment to consumers has been determined, or the further order of the court. Under these provisions I think the legitimate interests of the plaintiff on this application will be met and the funds so used as to add to the property and security behind the company's bonds, which, by these provisions, are intended to insure to the consumers who pay the old rate a return of the difference paid by them, if the law is ultimately held to be constitutional.

The terms of the order submitted by the public service commission, so far as consistent herewith, is therefore substantially approved, but it should be in the form of a new order and not a resettlement of the previous order. Under the special conditions presented in order to enable the company to secure bonds to comply with these provisions, the funds may be used to pay off the $85,000, thereby releasing $200,000 of bonds, but the other expenditures in Exhibit G are operating expenses. As new bonds can only under the mortgage be issued against improvements, etc., and the company should not be restricted in the use of bonds already earned, the injunction against the use of bonds, except for the purpose of deposit, should be omitted.

Ordered accordingly.