SAN JOAQUIN & KINGS RIVER CANAL & IRRIGATION CO., Inc., v. STANISLAUS COUNTY et al.

(Circuit Court, N. D. California. June 29, 1908.)

No. 14,554.

1. WATERS AND WATER COURSES — IRRIGATION COMPANIES — REGULATION OF RATES BY COUNTIES—CALIFORNIA STATUTE.

Under Act Cal. March 12, 1885 (St. 1885, p. 95, c. 115), which provides that the boards of supervisors of the several counties of the state shall estimate as near as may be the value of the canals, ditches, flumes, water ways, and all other property actually used and useful in the appropriation and furnishing of water for sale in the county by any irrigation company, etc., and in like manner to estimate the annual reasonable expenses of such company, including the cost of repairs, and to establish maximum rates of charge for water by such company such that its net annual receipts and profits shall be not less than 6 nor more than

·18 per cent. upon the said value of the property, when in making such· estimate a deduction is made for deterioration of the plant from year to· year, an allowance should be made for such deduction and added to the annual income in fixing the rates of charge to cover the cost to the company of renewal or reconstruction.

2. SAME.

In the fixing of such rates of charge by the boards of different counties· in which the water is supplied by the same canal, under the established construction that the statute entitles the company to a net profit of not less than 6 per cent. on the value of its entire plant, and that its earnings in all of the counties must be taken into consideration in determining the·reasonableness or legality of any particular rate, the distance of· each county from the head of the canal and the consequent loss of water· from seepage and evaporation should be taken into account, and as between the respective counties the higher charge should be authorized by· the one having the longest flow.

3. INJUNCTION—SUBJECT OF RELIEF—PUBLIC BOARD—AVOIDING MULTIPLICITY· OF SUITS.

A court of equity has jurisdiction of a suit by an irrigation company· to enjoin the boards of supervisors of the respective counties through which its canal extends from enforcing rates fixed by them under the California statute, which it is alleged do not enable the company to earn in the aggregate the income to which it is entitled under the statute, and to determine in a single suit the legality of such rates, on the ground of avoiding a multiplicity of suits.

4. SAME—PRELIMINARY INJUNCTION.

A bill and the showing made thereunder *held* sufficient to entitle an irrigation company to a preliminary injunction to restrain the boards of· supervisors of counties through which its canal extends, and in which it furnishes water to consumers, from enforcing rates of charge established· by them until the legality of such rates could be determined, on the giving of a bond to secure the repayment of any charges collected which should finally be held illegal.

In Equity. On motion for preliminary injunction.

Frank H. Short, Garret W. McEnerney, W. B. Treadwell, and Edward F. Treadwell, for complainant.

L. J. Maddux, for county of Stanislaus.

M. F. McCormick, for counties of Fresno and Merced.

MORROW, Circuit Judge. In 1896 the San Joaquin & Kings River Canal & Irrigation Company, a California corporation, and the predecessor in interest of the complainant, a Nevada corporation, brought suit in this court to enjoin the enforcement of an order of the board of supervisors. of Stanislaus county, fixing the rates to be charged by the complainant for water distributed by it in said county. The complainant in its bill referred to the laws of the state of California under which it was organized, and set up certain facts concerning the value of the property embraced in its canal system, and averred that the rates so fixed by the board of supervisors were grossly unfair and unreasonable, and, as applied to the complainant's business, would deprive it of its property without due process of law, and would deny to it the equal protection of the laws. Upon a final hearing had in 1902, a decree was entered in favor of the complainant. San Joaquin & Kings River C. & I. Co. v. Stanislaus County (C. C.) 113 Fed. 930. The defendant took an appeal from this decree direct to the

Supreme Court of the United States, upon the constitutional question involved. In that court the provisions of the laws of the state under which the complainant was organized and was continuing to do business were discussed, and the rights of the complainant under such acts considered and as far as necessary determined. The fact was also referred to that complainant's canal extended through the counties of Fresno and Merced, as well as into the county of Stanislaus, and it was held that the rates fixed by Fresno and Merced counties were elements to be considered in determining whether the rates fixed by Stanislaus county were reasonable and just. The opinion of the court concluded with this observation:

"Hereafter, in case the other counties should fix rates in such manner that, taken as a whole, the rates in the three counties would not insure an income of at least 6 per cent., as provided in the act of 1885 (St. 1885, p. 95, c. 115), the company would, of course, not be bound to accept such rates, and a decree in this case would not bind it in regard to the propriety of rates for the future, as fixed by the ordinance of 1896 for the county of Stanislaus."

The decision of the court directed that the judgment of the Circuit Court should be reversed, and the bill dismissed, without prejudice. Stanislaus County v. San Joaquin C. & I. Co., 192 U. S. 201, 24 Sup. Ct. 241, 48 L. Ed. 406. On September 19, 1907, the complainant, following the decision of the Supreme Court that Fresno and Merced counties were necessary, if not indispensable, parties to the controversy, filed the present bill against the boards of supervisors of the counties of Fresno, Merced, and Stanislaus. The jurisdiction of this court is based upon diverse citizenship, also upon the claim that the case involves the construction or application of the Constitution of the United States. The equity jurisdiction of the court is invoked to avoid a multiplicity of suits. The general object of the bill is to have it judicially determined: That certain rates fixed by the supervisors of the counties of Merced, Fresno, and Stanislaus for the sale, rental, and distribution of water by the complainant to the inhabitants of said counties, do not, as a whole, furnish the return for the use of its property as provided by law; that the rates are therefore unreasonable and such as to deprive complainant of its property without due process of law and without just compensation. The present proceeding is upon an order, based upon the verified bill and affidavits, that defendants show cause why an injunction pendente lite should not issue, restraining them, during the pendency of this suit, and until the further order of this court, from enforcing the orders fixing the rates for the sale, rental, and distribution of water mentioned in the bill of complaint.

The defendants have answered the order to show cause by affidavits setting forth certain facts which do not materially controvert the facts set up by complainant in its bill, but which it is contended justified the board of supervisors in making the orders fixing the rates which are the subjects of controversy.

It is alleged in the bill of complaint: That the complainant owns and maintains a system of canals and works for the purpose of diverting, carrying, and distributing water in the counties of Fresno, Merced, and Stanislaus; that said canals and works head on the San Joaquin

river at its junction with the Fresno slough in the county of Fresno, and thence, running through said counties of Fresno and Merced, enter and terminate in the county of Stanislaus; and that it has the right to divert from said San Joaquin river and into said canals not less than 760 cubic feet of water per second, when there is so much water flowing in said river at complainant's head works, and, when less than that quantity is there flowing, then all the waters flowing in said river.

The boards of supervisors of the several counties of the state are required, under the act of the Legislature of the state, approved March 12, 1885 (St. 1885, p. 95, c. 115), to estimate as near as may be the value of the canals, ditches, flumes, waterways, and all other property actually used and useful in the appropriation and furnishing of water by persons, companies, or corporations for sale, rental, or distribution to the inhabitants in the several counties of the state, and in like manner to estimate the annual reasonable expenses of such persons, companies, or corporations, including the cost of repairs, management, and operating such works. Upon these estimates the boards of supervisors are authorized, under section 2 of the act, to establish maximum rates at which water shall be sold, rented, or distributed. The rates are required, under section 5, to produce a net income of not less than 6 nor more than 18 per cent. per annum upon the value of the property used and useful in furnishing such water. In pursuance of this requirement of the statute, the boards of supervisors in Fresno, Merced, and Stanislaus counties estimated the value of complainant's property in each of said counties for the year 1907, and also the annual reasonable expenses of maintaining such property in said counties in furnishing the inhabitants with water for irrigation purposes during said year. These estimates were as follows:

| | |
|---|---:|
| Value of property in Fresno county | $ 116,250 00 |
| Value of property in Merced county | 750,000 00 |
| Value of property in Stanislaus county | 335,456 32 |
| Total in three counties | $1,201,706 32 |

The boards of supervisors of the three counties, as authorized and required by section 2 of the act, fixed the maximum rates which complainant might charge the inhabitants of the counties for each and every kind of irrigation, as follows: In Fresno county 85 cents per acre per annum, in Merced county $1.65 per acre per annum, and in Stanislaus county $1.50 per acre per annum. It is alleged in the complaint that the greatest area for irrigation which complainant or its predecessor has ever furnished or been called upon to furnish in said counties is 103,980 acres, as follows: In Fresno county 39,928 acres, in Merced county 52,379 acres, and in Stanislaus county 11,673 acres.

The income from complainant's property in these three counties, based upon the areas stated and the rates fixed by the boards of supervisors, is as follows:

Income:

| | |
|---|---:|
| In Fresno County | $ 33,938 80 |
| In Merced county | 86,425 35 |
| In Stanislaus county | 17,509 50 |
| | $137,873 65 |

Estimated reasonable annual expenses:

In  Fresno  county............................................... $21,750 00
In  Merced  county..............................................   37,000 00
In  Stanislaus  county..........................................   35,000 00

                                                                 $93,750 00

Deducting the estimated expenses from the estimated income, the result as a whole is a net annual income of $44,123.65, or 3.67 per cent. on the estimated value of the property as determined by the boards of supervisors.

But complainant claims the right to have the equivalent of not less than 6 per cent. per annum on the reasonable value of its property under the provisions of section 5 of the act. This section provides as follows:

"Said boards of supervisors, in fixing such rates, shall, as near as may be, so adjust them that the net annual receipts and profits thereof to the said persons, companies, associations, and corporations so furnishing such water to such inhabitants shall not be less than six nor more than eighteen per cent. upon the said value of the canals, ditches, flumes, chutes, and all other property actually used and useful to the appropriation and furnishing of such water of each of such persons, companies, associations and corporations."

If the complainant is entitled to receive a net income from its property of not less than 6 per cent. per annum, as provided by the statute, and the valuations fixed by the boards of supervisors are correct, then the rates fixed by such boards and which are the subject of controversy do not give the complainant. a fair, just, or reasonable return upon the value of its property as a whole, and such rates have the effect to deprive the complainant of its property without due process of law.   Spring Valley Waterworks v. City and County of San Francisco (C. C.) 124 Fed. 574, 601; Consolidated Gas Co. v. City of New York (C. C.) 157 Fed. 849, 879.  But this is not all.  The estimated reasonable annual expenses of the complainant in operating its canal system, so far as relates to the county of Stanislaus, is, as has been stated, the sum of $35,000.  The maximum rate to be charged for water is $1.50 per acre per annum.  The number of acres irrigated in that county is 11,673.  The complainant's income in Stanislaus county would therefore be $17,509.50, as above stated, or $17,490.50 less than the estimated expense as determined by the board of supervisors.  It cannot be that complainant is required to deliver water at a loss, but that appears to be the position taken by the board of supervisors of Stanislaus county, if any reliance can be placed upon the official estimates placed before the court upon the hearing.  It is true that upon the argument counsel for Stanislaus county denied that this estimate of expense for Stanislaus county is correct and claimed that it referred to the expense of the complainant's canal system in all three counties.  If this is so, then no estimate has been made by the board of supervisors of Stanislaus county of the expense of complainant's canal system in that county, and there was therefore no basis upon which they could fix a valid rate for that county.

The estimate of valuation made by the board of supervisors of Stanislaus county appears to be based upon a report made to the board

of supervisors by Charles E. Sloan, a civil mining and construction engineer. In this report he says:

"That in June, 1907, he made a thorough and extensive examination of the canals and works of the complainant actually used by complainant for the appropriation and furnishing of water to the inhabitants of the county of Stanislaus; that said examination was made for the purpose of estimating the present value of said canals and works and the annual reasonable expenses incurred by complainant in supplying water to the inhabitants of said county of Stanislaus, which said expenses include the cost of repairs, management and operation of said canals and works; * * * that the said examination was made by minutely examining every part of said canal works from the beginning to the end, and estimating the cost of materials, labor and property of said canal in accordance with the present day prices, and the deducting for depreciation to obtain the present value; that said detailed report, which is hereinafter set forth and made a part of this affidavit, shows that the present cost of said canals and works is four hundred thirteen thousand three hundred six and $32/100$ ($413,306.32); * * * that after subtracting for depreciation, the present value is estimated to be three hundred thirty-five thousand four hundred fifty-six and $62/100$ ($335,456.62)."

The report attached to the affidavit contains a detailed statement of the quantity of earth work in cubic yards, the quantity of lumber in feet, telephones, station building, dredger, scrapers, plows, tools, etc., horses, harness, and wagons, scows, skiffs, etc., engineering, superintendency, and incidentals. The cost of the material and work is stated as being $413,306.32, but from this sum the engineer deducts $77,-849.70 for deterioration in the value of materials. For deterioration in lumber, carpenter work, nails, and iron he deducts $47,849.70, and for deterioration in earth work he deducts $30,000, making a total of $77,849.70, leaving complainant's plant useful for Stanislaus county valued at $335,456.62. Whether there is such a deterioration in the value of the plant is an issue that cannot be determined upon affidavits, and need not be determined upon this hearing, as the estimate of value made by the board of supervisors of Stanislaus county has taken this deterioration into account and is the net valuation after deducting for deterioration that enters into the total valuation of the whole plant at $1,201,706.32 for the three counties, and upon which the rates fixed yield the complainant an income of only 3.67 per cent. per annum. But if we admit the claim of deterioration, it has this aspect to be considered: That if a deduction is to be made from the value of the plant on this account, then an allowance should be made for such deduction and added to the annual income, to enable the complainant to renew and reconstruct so as to preserve the integrity of the plant. If this is not done, and the deterioration continues from year to year, as it will, and the rates are reduced accordingly each year, both will eventually decline to a vanishing point. For example, suppose the value of the plant last year was $1,000,000, and the rates fixed yield a net income of 6 per cent., or $60,000, without any allowance whatever for deterioration. The value of the plant this year is $1,000,000, less a deduction for deterioration of, say, 5 per cent. or $50,000. Deducting that amount from $1,000,000, we have $950,000 as the value of the plant upon which the income of 6 per cent., or $57,000, is to be allowed. If this method of deducting for deterioration from year to year be carried on long enough without any provisions

being made for renewal or reconstruction, the plant and its income will, of course, eventually disappear. To avoid this result there should be a reasonable provision for renewal or reconstruction work, such as is now always provided for in the operation of any well-conducted manufacturing plant, and sanctioned by the courts in determining the reasonableness of rates fixed by public service corporations. San Diego Land Company v. National City, 174 U. S. 739, 757, 19 Sup. Ct. 804, 43 L. Ed. 1154; Stanislaus County v. San Joaquin C. & I. Co, 192 U. S. 201, 215, 24 Sup. Ct. 241, 48 L. Ed. 406. It follows that if there is such deterioration going on in plaintiff's works as claimed by the defendants, and no provision is made for renewal or reconstruction, as there is not in the estimates before the court, then the rates fixed by them, which yield an income of only 3.67 per cent. per annum, are still further unreasonable and unjust, for this reason, if for no other.

There is still another feature of this case to be considered, and that is the relative cost of delivering the water through complainant's canals to the inhabitants of the three counties. As before stated, the head works of complainant's canal system are in Fresno county. It runs through Fresno county in the direction of Merced county, through Merced county, into Stanislaus county.

It is alleged in the complaint that complainant is in possession of and is able to furnish at the head of its system of canals 760 cubic feet of water per second; but, owing to the necessary evaporation and seepage of water in said canals, .1243 of said water is lost in delivering the same in said county of Fresno, .339 of said water is lost in delivering the same in said county of Merced, and .5367 of said water is lost in delivering the same in said county of Stanislaus.

The affidavit of J. D. Schuyler, a civil engineer, states that in 1904 he made an examination of complainant's canal for the purpose of determining generally the loss by seepage. His conclusions were that if 1,000 second-feet (that is, cubic feet per second), which he says is about the capacity of said canal, were admitted at the head, the average loss by seepage in the first 30 miles would approximately be about 10 second-feet per mile, in the next 25 miles about 7 second-feet per mile, and in the last 6 miles about 5 second-feet per mile. He concludes that it would be necessary to turn into the said canal at its head not less than 400 second-feet in order that any water should reach Stanislaus county, and that, if 600 feet should be turned in at the head, not more than 150 second-feet would reach the lower end. This loss, whatever it may be, would seem to indicate that complainant ought not to be required to deliver water in Stanislaus county for a less rate than in Merced county, which is nearer the head works; but this is precisely what the rate fixed in Stanislaus county requires. The rate fixed in the latter county is $1.50 per acre per annum, while the rate fixed in Merced county is $1.65 per acre per annum. The service rendered by complainant to the inhabitants of Stanislaus county in the delivery of water to them by an open canal, at a distance of 60 or 70 miles from the head works, must, all things considered, be of greater value than a like service rendered to the inhabitants of Merced county, at a distance of 30 to 60 miles from the head works, and if the

rate of $1.65 fixed for the latter service is reasonable and just, it would seem that the rate of $1.50 fixed for the former service was unreasonable and unjust in not providing the complainant a reasonable compensation for the service rendered.

This view is further confirmed by the fact that the board of supervisors of 'Merced county have fixed the rate for that county at $1.65 per acre per annum, while the board of supervisors of Fresno county, where the head works are located, have fixed the rate at 85 cents per acre per annum, showing that in the judgment of the former board the complainant was entitled to receive a higher rate for the service of delivering water in Merced county than for a similar service in Fresno county. These comparisons indicate that the controversy turns mainly upon the reasonableness of the rates fixed in Stanislaus county. Indeed, it was admitted upon the hearing that the complainant had no substantial controversy with the boards of supervisors of either the counties of Fresno or Merced individually; but, under the decision of the Supreme Court of the United States, the complainant cannot ignore those two counties in having it judicially determined whether it is being deprived of an income to which it is entitled under the law, and, if so, to what extent, if any, either of the counties is at fault. This appears to be a difficult question. The Supreme Court, in referring to it, said:

"Exactly how the question may be hereafter determined as to the percentage of income, where there are three different boards of supervisors who may fix rates for the respective counties, each differing from the other, is not made clear by the statute."

It certainly cannot be determined upon the present hearing. The question now before the court is whether, upon the showing made, the complainant has made out a sufficient case to entitle it to an injunction to preserve the status quo until the case can be heard upon the merits, and in reaching a conclusion upon that question the court must consider the case as a whole. The argument upon the hearing took a wide range, touching questions that can only be determined upon the final hearing.

Whether complainant is entitled to an injunction pending litigation is comparatively a narrow question. In Glascott v. Lang, 3 Myl. & C. 451, 455, Lord Chancellor Cottenham said:

"In looking through the pleadings and the evidence, for the purpose of an injunction, it is not necessary that the court should find a case which would entitle the plaintiff to relief at all events. It is quite sufficient if the court finds, upon the pleadings and upon the evidence, a case which makes the transaction a proper subject of investigation in a court of equity."

In Hadden v. Dooley, 74 Fed. 429, 431, 20 C. C. A. 494, Judge Shipman, in the Circuit Court of Appeals for the Second Circuit, said:

"When the questions which naturally arise upon the transactions make them a proper subject for deliberate examination, if a stay of proceedings will not result in too great injury to the defendants, it is proper 'to preserve the existing state of things until the rights of the parties can be fairly and fully investigated and determined' by evidence and proofs which have the merit of accuracy."

In City of Newton v. Levis, 79 Fed. 715, 25 C. C. A. 161, Judge Sanborn, in the Circuit Court of Appeals for the Eighth Circuit, declared a rule respecting the granting of preliminary injunctions which has since been so often cited with approval by other courts that it may be deemed to have become the established law upon the subject. He says:

"The controlling reason for the existence of the right to issue a preliminary injunction is that the court may thereby prevent such a change of the conditions and relations of the persons and property during the litigation as may result in irremediable injury to some of the parties before their claims can be investigated and adjudicated. When the questions to be ultimately decided are serious and doubtful, the legal discretion of the judge in granting the writ should be influenced largely by the consideration that the injury to the moving party will be certain, great, and irreparable if the motion is denied, while the inconvenience and loss to the opposing party will be inconsiderable, and may well be indemnified by a proper bond, if the injunction is granted. A preliminary injunction maintaining the status quo may properly issue whenever the questions of law or fact to be ultimately determined in a suit are grave and difficult, and injury to the moving party will be immediate, certain, and great if it is denied, while the loss or inconvenience to the opposing party will be comparatively small and insignificant if it is granted."

The questions to be ultimately decided in this case are certainly serious and doubtful, as intimated by the Supreme Court, where there are three different boards of supervisors representing counties each differing from the other in its relation to complainant's canal system, and where the boards differ as to the valuation to be placed upon the property used and useful in delivering water to the inhabitants of their respective counties and the expenses of the complainant in performing this service and the rates to be charged in each county that will yield in the aggregate a net income of not less than 6 per cent. per annum on the value of the property as a whole. To solve these questions fairly will require a very full and accurate investigation, aided by testimony carefully sifted by the usual rules of examination. It cannot be accomplished on a hearing where the evidence is submitted upon affidavits, but the court is required upon this hearing to determine whether the evidence so presented is prima facie sufficient to justify the court in restraining the defendants from enforcing the rates established by them pending litigation. To determine this question the court must consider the case in its entirety and as producing aggregate results.

For that purpose a reference to further evidence is necessary. In the former case, R. H. Goodwin, an engineer of large experience, was employed by the board of supervisors of Stanislaus county as an expert to estimate the value of the works of complainant's predecessor in interest as of that date, namely, the year 1896. The estimate as made for the board of supervisors by Goodwin had no relation to the amount of capital actually invested in the corporation by the shareholders or the original cost of the property, but was based upon the estimated reasonable value of the property at that date. This method of ascertaining the value was approved by the Supreme Court. Stanislaus County v. San Joaquin C. & I. Co., 192 U. S. 201, 215, 24 Sup. Ct. 241, 48 L. Ed. 406. In the present case, Mr. Goodwin has made

a detailed estimate of the value of complainant's entire canal system for the year 1907. This estimate is attached to an affidavit dated January 8, 1908, in which the affiant declares that his examination of the property was very thorough and complete, and occupied a period of about 50 or 60 days. The estimate is in elaborate detail and, as in the previous case, is not based upon the original cost of the works, but upon their estimated reasonable value at the time of the examination. It appears from this detailed estimate that complainant's head works were of the value of $84,732.23, that its canal system in Fresno county was of the value of $312,947.38, that in Merced county the system was of the value of $524,175.60, and that in Stanislaus county the system was of the value of $74,457.42. The aggregate value of complainant's head works and canal system in the three counties named was therefore the sum of $996,312.63. In addition to this valuation is the value of the land occupied by the canals and their rights of way, which does not appear in Mr. Goodwin's affidavit; but this valuation is furnished by the affidavits of parties claiming to have knowledge of the lands in the locality where the canals are situated. In Fresno county the average valuation is given at $15 to $20 per acre, in Merced county at $60 to $70 per acre, and in Stanislaus county at $100 per acre. The land occupied in Fresno county for head works is 78.44 acres, and for canals 1,288.50 acres, making a total of 1,366.94 acres, which, at $15 per acre, the lowest valuation, would be of the total value of $20,504.10. The land occupied by canals in Merced county is 2,016.63 acres, which, at $60 per acre, the lowest valuation, would be of the total value of $120,997.80. The land occupied by canals in Stanislaus county is 290.90 acres, which, at $100 per acre, would be of the total value of $29,090. These valuations of the lands occupied by the head works and canals make a total of $170,591.90, which amount, added to the valuation of $996,312.63 for the head works and canals, makes a total of $1,166,904.53 for complainant's physical properties employed in the business under consideration. There is, however, the additional value of the right to divert 760 cubic feet of water per second from the San Joaquin river for irrigation purposes, which it is alleged in the complaint is of the value of $760,000. In the affidavit of Samuel Fortier, an irrigation engineer of high repute, this right is valued at $25 per acre for the land under complainant's canal system. As the area of this land is 103,980 acres, this valuation would amount to $2,599,500; but, while this right is undoubtedly of value, it may not be a value upon which ultimately complainant may be given a return under the law. It is therefore not made a part of the valuation of complainant's property for the purpose of the present proceeding, but it is referred to as presenting a question that will require future consideration. For the present, the doubt is resolved against the complainant.

We now proceed to consider the question of income provided for the use of complainant's visible tangible property alone. The number of acres irrigated in the three counties, respectively, in the year 1905, was as follows:

In Fresno county:
    Main canal system............................................. 26,392
    Dos Palos system............................................. 5,279
    Outside system............................................. 8,257
                                                                    ————
                                                                    39,928
In Merced county:
    Main canal system........................................... 33,662
    Dos Palos system........................................... 5,838
    Outside system............................................ 12,879
                                                                    ————
                                                                    52,379
In Stanislaus county:
    Main canal system........................................... 11,673
                                                                    ————
        Total   ................................................. 103,980

The maximum rates fixed by the boards of supervisors to be charged by the complainant to the inhabitants of the counties, respectively, for each and every kind of irrigation, would yield an income amounting to $137,873.65 per annum. The books of the complainant show that the annual expenses of complainant's canal system, including the cost of repairs, management, and operating expenses, was, for the year 1906, the sum of $87,669.75, or, omitting the cost of litigation as to water rates, the sum of $86,437.50. Deducting these latter costs and expenses from the estimated income of the complainant for the same period, the result is a net annual income of $51,436.15. This net income is equivalent to 3.08 per cent. of the total estimated value of complainant's canal system, amounting to $1,166,904.53. Whether this is a fair and reasonable return on the value of complainant's property, without regard to the minimum rate of 6 per cent. provided by law, is a question the court is not called upon to determine. All the court is called upon to decide is whether the rates established are based upon a reasonable valuation and yield a net income of 6 per cent. But disregarding the provision of the statute, there is no evidence before the court that an income of 4.40 per cent. per annum for this kind of property is reasonable and just.

In the case as presented to the court there does not appear to be any reason why the complainant should be required to accept, on the valuation made by the board of supervisors, a net income of 3.67 per cent. per annum, or why the complainant should be required to receive a net income of 4.40 per cent. per annum on the detailed valuation made by Engineer Goodwin. The value of the water to the consumers in all three counties, as shown by the complaint and supporting affidavits, is much more than the equivalent of an income of 6 per cent. per annum. The facts shown are summed up in the allegations of the complaint:

"That the portions of said three counties through which complainant's said canals run are of an extremely arid nature, and such that agriculture cannot be profitably carried on without artificial irrigation," and the "inhabitants" of the three counties, "paying for said water at rates which would so enable the complainant to receive such annual net income of 6 per cent., could and would realize annual net profits in the cultivation of their lands much exceeding 6 per cent. upon the amount invested by them therein."

It is objected by counsel representing the county of Stanislaus that the complainant has been guilty of laches in not sooner pressing this controversy to a judicial determination, but it appears that complainant has been endeavoring ever since 1896 to have the question at issue settled by the courts. The complainant's predecessor was organized as a corporation under the laws of the state of California in September, 1871. By the act of March 12, 1885 (St. 1885, p. 95, c. 115), the Legislature of the state authorized the several boards of supervisors of the state to fix and regulate the maximum rates at which any person, company, association, or corporation should sell, rent, or distribute water in each of the counties of the state. In 1896 the county of Stanislaus for the first time fixed rates under the act of 1885. These rates were the subject of controversy in San Joaquin & Kings River C. & I. Co. v. Stanislaus (C. C.) 113 Fed. 930, decided in 1902, and Stanislaus County v. San Joaquin C. & I. Co., 192 U. S. 201, 24 Sup. Ct. 241, 48 L. Ed. 406, decided January 18, 1904. Consumers of water in Merced and Fresno counties thereupon applied to the boards of supervisors of those counties to fix rates for water, which they did in 1904, and these were the first rates fixed by those counties. It was claimed by complainant's predecessor that those rates, taken in connection with the rates fixed by Stanislaus county in 1896, did not give the complainant 6 per cent. upon its investment as a whole, and thereupon it brought suit in the superior court of Fresno county to have the rates set aside. This suit was decided in August, 1906; the court holding that it could not give relief because the canal company had not applied to the county of Stanislaus for a new ordinance fixing rates which, together with the rates fixed by the counties of Merced and Fresno, would determine the income to which the canal company was entitled for the use of its plant as a whole. The canal company appealed from that decree to the Supreme Court of the state, where the case is now pending. All three counties fixed rates for the second time in the year 1907. It is the latter rates that are here in controversy. That the first suit against the county of Stanislaus failed to accomplish a judicial determination of the controversy was not because complainant did not assert its rights against that county, but because Fresno and Merced counties had not been made parties to the action. It cannot be said therefore that, as against the county of Stanislaus, the complainant is pressing a stale claim, and, besides, with respect to all three counties, it appears that complainant is seeking, with reasonable promptness under all the circumstances, to have its rights determined.

It is objected that the equity jurisdiction of this court should not be extended to this case, on the ground that it will avoid a multiplicity of suits. In support of this objection, it is said that complainant's predecessor had commenced in the state court 140 suits against consumers along the canal in Stanislaus county to recover the difference between $1.50 per acre and $2.35 per acre per annum. These suits obviously relate to past transactions wherein complainant claims to have delivered water to consumers for which it has not been paid the amounts to which it was entitled under the law. The suits are against

individuals in one county, and manifestly such actions at law are inadequate to determine this controversy. The present suit relates to the action of the boards of supervisors in all three counties with respect to rates to be charged all consumers for the year commencing July 1, 1908. It has reference to the future alone, and its purpose is to have the whole controversy in that respect determined in one suit. To state these facts is to answer the objection and furnish a sufficient reason for the equity jurisdiction.

It seems to me clear, from the foregoing statement of the main facts presented to the court upon the hearing, that prima facie the maximum rates fixed by the boards of supervisors of Fresno, Merced, and Stanislaus counties for the use of complainant's property used and useful in delivering water for irrigation purposes to the inhabitants of these counties, will not, as a whole, yield the minimum income to which complainant is entitled under the law; but as this conclusion is based upon the facts presented by the verified bill and the affidavits in support thereof, and upon a final hearing the facts may appear to be otherwise, I deem it proper to provide for the contingency that upon the final hearing the evidence may not justify a decree in favor of the complainant. It is therefore ordered that a temporary injunction issue, as prayed for in the complaint, upon the complainant filing an undertaking herein with two sufficient sureties (or any surety company approved by the clerk of this court as a single surety), in favor and for the benefit of the defendants, also for the benefit of any person or persons, and all persons who may be injured by reason of this order, in the sum of $100,000, conditioned that the complainant will pay to the defendants, or any of them, and to any person or to all persons who may be injured by reason of this order, any and all damages which they or any of them may sustain in the premises, if upon the entry of a final decree in this action upon the merits the defendants shall prevail, or if it should be determined and adjudged that this order has been or is improvidently issued.