### SAN FRANCISCO GAS & ELECTRIC CO. v. CITY AND COUNTY OF SAN FRANCISO et al.

(Circuit Court, N. D. California. October 26, 1908.)

No. 14,742.

1. **INJUNCTION (§ 138\*)—SUIT AGAINST MUNICIPALITY—PERSONS BOUND.**

In a suit by a gas company against a city and its officers to enjoin the enforcement of an ordinance fixing the price of gas to be charged to all consumers as unconstitutional, where the defendant is itself a consumer and the total number of such consumers is so large as to preclude their being made parties, and the bill alleges that under the ordinance and statutes of the state any consumer may maintain an action to compel complainant to furnish gas at the rate prescribed by the ordinance or to recover a penalty on its refusal, a temporary restraining order granted pending a hearing may properly include all consumers although not parties to the record, such consumers being the real parties in interest and represented by the municipality.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 310; Dec. Dig. § 138.\*]

2. **INJUNCTION (§ 149\*)—TEMPORARY RESTRAINING ORDER—CONDITIONS.**

In such case, however, the court may properly require complainant to pay into court any excess above the ordinance rate collected from consumers while the restraining order is in force, to be disposed of by the court on the final determination of the case.

[Ed. Note.—For other cases, see Injunction, Dec. Dig. § 149.\*]

In Equity. On motion to modify temporary restraining order.

Garret W. McEnerney, for complainant.

Percy V. Long, City Atty., and Thomas E. Haven, Deputy City Atty., for defendants.

VAN FLEET, District Judge. This is an application to modify the temporary restraining order heretofore made in this cause. There are in fact two separate motions, but they may be treated and considered as one. The order was granted under these circumstances: On July 9, 1908, the complainant filed its bill in this court, praying that it be adjudged that a certain ordinance of the city and county of San Francisco purporting to fix gas rates be declared void, because in contravention of the fourteenth amendment to the Constitution of the United States; that complainant be granted an injunction, both temporary and permanent, against the defendants, enjoining and restraining them and each of them and all persons acting by or under their authority, as officers, agents, servants, employés, or otherwise, from in any way enforcing or attempting to enforce the ordinance or any of its provisions against the complainant, and that a temporary restraining order be granted until the court could determine, upon motion and hearing, whether an injunction pendente lite should issue.

No restraining order was made on the filing of the bill, but instead an order to show cause was granted, returnable on July 13, 1908, when by consent the hearing was continued until July 14th. At the latter time the defendants appeared by the city and county attorney, and moved on affidavit for a continuance of at least 30 days; whereupon this occurred:

"Mr. McEnerney: If your honor please, when we applied to your honor we might have applied for a restraining order. We did not. We applied for just a plain order for a summary hearing, and if this matter should go over for any length of time—I lay out of view any personal concern that I may have in it—it is only due to our clients that we should have a restraining order.

"The Court (to the city and county attorney): I suppose you would consent to the matter remaining in statu quo, would you not, during the pendency of any continuance?

"Mr. Long: While we cannot consent—if your honor please, I do not feel justified in consenting—at the same time we will not seriously object. I have not the power, may it please the court, to consent to the making or the entering of any such order.

"The Court: I suppose the court could impose that as a condition, that the parties stand restrained pending the hearing of the preliminary application.

"Mr. Long: I take it that your honor could do that.

* * * * * * * * * *

"Mr. Long: As I understand the ruling of your honor, it is that the continuance is granted upon this condition; that is, you impose a condition. I would like to have that in the record in order to escape any criticism.

"The Court: Oh yes, that is understood.

"Mr. McEnerney: And the bond is fixed at $150,000.

"The Court: Yes."

Thereupon the court, adopting the course pursued in that respect in Consolidated Gas Company v. Mayer (C. C.) 146 Fed. 150, granted the defendants a continuance of the hearing until September 8, 1908, upon condition that a restraining order issue pending the hearing, upon complainant giving a bond in $150,000.

It may be true, as suggested, that the attitude of the city and county attorney, as thus appearing of record, was tantamount to a consent that the restraining order issue; but while this might prevent defendants from having the order in its entirety set aside, I do not think it can be held to preclude their right to move for its modification in any proper respect. The order restrained the defendants named in the bill, their servants, employés, agents, etc., and "all consumers of gas furnished by complainant, and each of said consumers," from in any manner or in any wise attempting to enforce said ordinance or the rates therein established until the further order of the court. Defendants now ask that the order be modified in two particulars: (1) By striking out the provisions thereof which include consumers within its terms of restraint; and (2) by providing for the impounding by the court of any excess above the rate fixed by the ordinance involved which may be collected by the complainant pending the determination of the order to show cause.

The substantial ground upon which the first modification is asked is that, the consumers not being named as parties to the bill, the court was without jurisdiction to include them within the terms of its order. It is alleged in the bill that the defendant city and county of San Fran-

cisco has been and still is a consumer of the gas manufactured, distributed, and sold by the complainant, and has the right to require the complainant to furnish and deliver unto it gas for the purpose of illuminating the public streets and public buildings of the city and county of San Francisco at such legal and valid rates as may be prescribed by the city and county under and pursuant to the provisions of the Constitution in that behalf; and that complainant will be compelled to furnish and supply the city and county with gas for illuminating its said public streets and buildings at rates not exceeding the maximum rates prescribed by the ordinance. It is further alleged that the private or individual consumers of gas within the municipality exceed 50,000 in number, and that:

"Under and pursuant to the provisions of sections 629 to 632, both numbers included, of the Civil Code of the state of California, your orator is required to supply gas for illuminating purposes, at such rates as may have been legally established by said city and county, to the owner or occupant of any building or premises in said city and county and distant not more than one hundred feet from any of its gas mains, upon demand therefor being made, and upon the applicant paying or tendering all money due from him; and it is expressly provided in section 629 of said Civil Code that if, for the space of ten days after application therefor is made by any person entitled to gas service under the provisions of said section, the corporation to whom such application is made refuses or neglects to supply gas as required for the purposes of illumination, such corporation must pay to the applicant the sum of fifty dollars ($50.00) as liquidated damages, and five dollars ($5.00) per day as liquidated damages, for every day such refusal or neglect continues thereafter."

And it is alleged that:

"The defendants and many other consumers of gas residing in said city and county will, in case of your orator's refusing to comply with said ordinance, institute proceedings and actions at law to compel your orator to furnish them with gas at the rate prescribed by said ordinance, and to recover the penalties prescribed by said section 629 of the Civil Code of the state of California, and that your orator will thereby be irreparably damaged and subjected to a multiplicity of suits and proceedings."

Was it within the power of the court, under these facts, to include the general body of consumers within the restraint of the order? This depends upon whether such consumers, although not named as parties to the bill, are in contemplation of law to be regarded as such for the purposes of the relief sought. While it is undoubtedly the general rule that an injunction will not lie against one not a party to the bill, this rule is subject to certain well-defined exceptions. One of these exceptions is where the parties concerned are so numerous as to make it practically impossible to bring them all before the court, but, the right involved being common to all, one or more being made parties are permitted to represent all, or where those who are impleaded stand, under the law, in a representative or trust relation to those who are not. In such instances, where under the circumstances the decree would bind all, those not made parties are deemed to be potentially so, and as such within the jurisdiction of the court. The rule is thus stated in Smith v. Swormstedt, 16 How. 303, 14 L. Ed. 942:

"Where the parties interested in the suit are numerous, their rights and liabilities are so subject to change and fluctuation, by death or otherwise, that it would not be possible, without very great inconvenience, to make all of

them parties, and would oftentimes prevent the prosecution of the suit to a hearing. For convenience, therefore, and to prevent a failure of justice, a court of equity permits a portion of the parties in interest to represent the entire body, and the decree binds all of them the same as if all were before the court. The legal and equitable rights and liabilities of all being before the court by representation, and especially where the subject-matter of the suit is common to all, there can be very little danger but that the interest of all will be properly protected and maintained."

This rule is peculiarly applicable to cases like the present. Here the real parties in interest are the ratepayers or consumers—the public. The ordinance fixing the rate is for the benefit of the latter, not for that of the supervisors or municipality alone. The supervisors are acting in a purely representative capacity. They stand for and represent, not only the municipality, but the entire community or body of consumers, and in this respect they must be regarded as occupying the relation of trustees to the latter. As stated by Mr. Freeman in section 178 of his work on Judgments:

"The position of a county or municipal corporation towards its citizens and taxpayers is, upon principle, analogous to that of a trustee towards his cestuis que trust, when they are numerous and the management and control of their interests are by the terms of the trust committed to his care. A judgment against a county or its legal representatives in a matter of general interest to all its citizens is binding upon the latter, though they are not parties to the suit."

Here the purpose of the action is not only to have the obnoxious regulation declared void as violative of complainant's constitutional rights, but to have the enforcement of that rate restrained pending the determination of its validity, that complainant may not suffer irreparable wrong in the meantime through the bringing by individual consumers of a multiplicity of actions to enforce it. It being practically impossible, indeed prohibitive, in such a case to make each individual ratepayer a party, the law is satisfied by joining with the ratemaking body the board of supervisors, the city and county, which latter is not only itself a consumer, but stands as a representative of the entire body of consumers within the municipality. This principle was involved in the case of San Diego Land Co. v. Jasper (C. C.) 110 Fed. 702, 712, decided by Judge Ross. In that case the board of supervisors was made defendant, and with it were joined the petitioners upon whose petition, as required by the statute, the board had acted in making the regulation. These petitioners made default, and thereupon the complainant contended that the latter were the real parties in interest, and that it was entitled ipso facto upon their default to a decree against all the defendants. But this relief was denied, the court saying:

"The answer to the first point is that each and every person to whom the rates fixed apply—in other words, the public—is interested in the question, and the representative of this public in the matter is the board of supervisors, each member of which was by the complainant made a party defendant to the suit, and all of whom appeared to the bill and interposed a defense in behalf of all parties interested. This practice has been uniformly sanctioned and held to be proper. Railway Co. v. Minnesota, 134 U. S. 418, 10 Sup. Ct. 462, 702, 33 L. Ed. 970; Reagan v. Trust Co., 154 U. S. 362, 14 Sup. Ct. 1047, 38 L. Ed. 1014; Railroad Co. v. Smith, 128 U. S. 174, 9 Sup. Ct. 47, 32 L. Ed. 377; Stone v. Railroad Co., 116 U. S. 353, 6 Sup. Ct. 349, 29 L. Ed. 651; Rail-

way Co. v. Gill, 156 U. S. 649, 15 Sup. Ct. 484, 39 L. Ed. 567; San Diego Land & Town Co. v. City of National City (C. C.) 74 Fed. 79; Id., 174 U. S. 739, 19 Sup. Ct. 804, 43 L. Ed. 1154; Peik v. Railway Co., 94 U. S. 164, 24 L. Ed. 97."

This case went to the Supreme Court (San Diego Land & Town Company v. Jasper, 189 U. S. 439, 23 Sup. Ct. 571, 47 L. Ed. 892), and that Court, in affirming the decree of the Circuit Court, said:

"The default of the petitioner is relied upon as the ground of expressions in one or two cases here and elsewhere, that the duties of the supervisors are judicial in their nature. Spring Valley Water Works v. Schottler, 110 U. S. 347, 354, 4 Sup. Ct. 48, 28 L. Ed. 173; Jacobs v. Board of Supervisors, 100 Cal. 121, 130, 34 Pac. 630. The conclusion drawn is that when the original plaintiffs disappear the case is at an end. We need not stop to consider to what extent or for what purposes the proceedings before the supervisors properly may be termed judicial. See, further, San Diego Land & Town Co. v. National City, 174 U. S. 739, 750, 19 Sup. Ct. 804, 43 L. Ed. 1154; Cambridge v. Railroad Commissioners, 153 Mass. 161, 170, 26 N. E. 241. It is obvious that they are not so in such a sense as to do the appellant any good. The petitioners did not complain of injury to any private interest of theirs. They had none. They appeared on behalf of the public only and asked purely legislative action in the form of a general rule for the future to govern the public at large. San Diego Land & Town Co. v. National City, ubi supra; Spring Valley Water Works v. San Francisco, 82 Cal. 286, 22 Pac. 910, 1046, 6 L. R. A. 756, 16 Am. St. Rep. 116; Smith v. Strother, 68 Cal. 194, 8 Pac. 852; In re Janvrin, 174 Mass. 514, 55 N. E. 381, 47 L. R. A. 319. As soon as such a rule was established, if not as soon as a hearing was begun, the petitioners were merged in the public affected by the rule. The present bill is an independent proceeding to have the ordinance declared void. In such a case the body making the regulation is the usual, proper, and sufficient party respondent, and the default of those who set the original proceedings in motion is immaterial, so long as it defends the case."

Again, in Railway Company v. Minnesota, 134 U. S. 418, 10 Sup. Ct. 462, 702, 33 L. Ed. 970, Mr. Justice Miller, in his concurring opinion, discussing a similar question, said:

"(5) But until the judiciary has been appealed to to declare the regulations made, whether by the Legislature or by the commission, voidable for the reasons mentioned, the tariff of rates so fixed is the law of the land, and must be submitted to both by the carrier and the parties with whom he deals.

"(6) That the proper, if not the only, mode of judicial relief against the tariff of rates established by the Legislature or by its commission, is by a bill in chancery asserting its unreasonable character and its conflict with the Constitution of the United States, and asking a decree of court forbidding the corporation from exacting such fare as excessive, or establishing its rights to collect the rates as being within the limits of a just compensation for the service rendered.

"(7) That until this is done it is not competent for each individual having dealings with the carrying corporation, or for the corporation with regard to each individual who demands its services, to raise a contest in the courts over the questions which ought to be settled in this general and conclusive method."

See, also, St. Louis & S. F. R. Co. v. Gill, 156 U. S. 649, 15 Sup. Ct. 484, 39 L. Ed. 567; Reagan v. Trust Co., 154 U. S. 362, 14 Sup. Ct. 1047, 38 L. Ed. 1014; Smyth v. Ames, 169 U. S. 466, 18 Sup. Ct. 418, 42 L. Ed. 819; San Diego Land & Town Co. v. National City, 174 U. S. 739, 19 Sup. Ct. 804, 43 L. Ed. 1154; Spring Valley Water Works v. San Francisco, 82 Cal. 286, 22 Pac. 910, 1046, 6 L. R. A. 756, 16 Am. St. Rep. 116. These cases proceed upon the theory that the rights to be protected under the regulating ordinance, and which

complainant has assailed, are public rights, and that the only practicable way of making the public a party is by suing its representatives; that when this is done the individuals composing the public are, equally with the parties named in the bill, bound by every step properly taken in the action, and may, therefore, be included in and restrained by the injunctive orders of the court.

It was upon this principle that Judge Morrow, by his injunction granted in Spring Valley Waterworks v. San Francisco (C. C.) 124 Fed. 574, an action to declare void an ordinance fixing water rates in the city and county of San Francisco, included the entire body of consumers, restraining the latter, equally with the defendants of record, from in any wise seeking to enforce the ordinance pending suit. Touching that question Judge Morrow says:

"In this discussion I have not considered the controversy concerning hydrant rates for water supplied to the city, alleged by the complainant to be unreasonably low, nor have I considered the water rates for public buildings paid for by the city. The questions discussed have had relation only to the rights of private consumers, and in this connection the court at the close of the oral argument suggested a query as to the effect of an injunction upon private consumers directed to the defendants the board of supervisors, or the officers of the municipal corporation. An examination of the authorities submitted by the counsel for the complainant with this question in view has satisfied me that there will be no difficulty in this aspect of the case. The board of supervisors, or the municipal corporation, or perhaps both, represent the water ratepayers in this controversy, and are bound by the proceedings. This has been established by abundant authority."

A like course was followed by Judge Morrow in the more recent case of San Joaquin, etc., Canal Company v. Stanislaus County (No. 14,554, decided June 29, 1908) 163 Fed. 567, and by Judge Gilbert in Contra Costa Water Company v. City of Oakland (No. 13,599) 165 Fed. 518, both in this court. And in Spring Valley Water Company v. San Francisco (No. 14,735, just decided by Judge Farrington) 165 Fed. 667, on motion for an injunction pendente lite, the same practice is followed and the consumers are expressly enjoined. These cases would seem to be conclusive of the question so far as this court is concerned. As against them defendants rely upon Consolidated Gas Company v. Mayer, above referred to; Richman v. Consolidated Gas Co., 114 App. Div. 216, 100 N. Y. Supp. 81; and Buffalo Gas Co. v. City of Buffalo (C C.) 156 Fed. 370. The first case was an action to have declared void a rate for illuminating gas in the city of New York. This rate had been fixed, not only by the gas commission—a rate-fixing body established by the Legislature, but the same rate had been established directly by act of the Legislature. The court, as here, had issued a temporary restraining order, as a condition for a continuance asked by defendants, prohibiting the officers specially charged with enforcing the rate from taking any step to that end pending litigation; and the motion was for an enlargement of the terms of the restraining order to extend its effect to the consumers. This feature of the motion was denied; the court, while using some general language favorable to defendant's views, very evidently placing its ruling upon the ground that the Legislature having itself fixed the rate sought to be avoided, and there being in such an instance no mode of ascertaining the basis upon which the Legislature had acted,

the presumption of the validity of the rate so fixed must obtain until the court could determine, upon final proof and hearing, that it was void, and that in the meantime its enforcement by consumers should not be enjoined. In that regard the court said:

"Irrespective of any action of the gas commission, the Legislature has itself fixed the 80-cent rate, and there is nothing to indicate upon what it predicated such action. For aught that we know, it may have reached the conclusion that the commission was in error in not including the franchises at their taxable value in the estimate of complainant's property, and may, at the same time, have concluded that 7, or 6, or even 5 per cent. was a proper return to be received by the owner of such property. This brings us to the fundamental question presented by the pleadings: Is the rate fixed by the Legislature (80 cents) so low as to be unjust or confiscatory? As was indicated at the outset of this opinion, there can be no intelligent answer given to this question until the whole case is presented upon testimony taken, not ex parte, but according to the rules for taking testimony in equity causes. Therefore, until the court at final hearing may have the opportunity to pass upon such a record, although the existing order is continued, its terms will not be enlarged, so as to undertake to restrain the actions of individual consumers, who are not parties to this suit and have not been served with process."

And as further indicating the special considerations moving the court to its conclusion, it is said:

"The city of New York is the largest consumer, an undoubtedly solvent consumer, and the only one made a party defendant. The rate it is to pay is not regulated by the action of the gas commission, nor by either of the two acts already considered. Chapter 736, p. 2091, of the Laws of 1905, provides that it shall pay only 75 cents per 1,000 cubic feet, and to that act there is raised an additional constitutional question not heretofore discussed. The representatives of the city and of the complainant have had no difficulty during two or three years of controversy in arranging a modus vivendi, whereby all rights of either side are reserved, and gas is furnished as required. It is not to be anticipated that there will be any difficulty about continuing such arrangement, but to facilitate it the order now to be entered may provide that payment by the city at the 75-cent rate, and acceptance thereof by complainant under protest, shall not operate as an accord, satisfaction, waiver, or estoppel to the prejudice of either side in any litigation pending or future. Such a clause may make it practicable for these contestants to eliminate some questions as to accruing interest."

A careful review of the whole case makes it clear that it was by reason of the particular circumstances arising from the effect of the acts of the Legislature that Judge Lacombe was led to hold that the case was outside the rule above indicated as applicable to the ordinary case where, as here, the rate is fixed by a board or commission after a hearing.

This was very clearly the view taken by the Supreme Court of New York in the second case above cited by defendants, where, passing upon the same rate, it was expressly held that, the regulation having been fixed by statute, its constitutionality must be presumed until a final judicial determination to the contrary; that until such determination can be had the consumers are entitled to service based thereon; and, further, that the rate fixed by the gas commission must be held as superseded by the act of the Legislature, and in such case the commission cannot be regarded as representing the consumers in a suit involving the validity of such legislative act. It is there said (114 App. Div. 224, 100 N. Y. Supp. 88):

"It may well be as contended by the learned counsel for the respondent, that, for the purpose of testing the validity of the action of the commissioners in fixing the 80-cent rate and the enforcement of the same, it was sufficient to make the commissioners parties, and that they upon those questions represent the consumers, who are to be benefited by their acts. San Diego Co. v. Jasper, 189 U. S. 439, 23 Sup. Ct. 571, 47 L. Ed. 892. It is evident, however, that it is immaterial to the rights of the plaintiff whether the statute creating the commission of gas and electricity, or the order made by that commission, be valid or invalid. The action of the commission is superseded by the statute subsequently enacted by the Legislature, which, since it contains no reference to the action of the commissioners, cannot be presumed to be based thereon. On the question of the validity of chapter 125 of the Laws of 1906, therefore, it follows that the members of the state gas commission cannot represent the private consumers."

The third case relied upon by defendants—decided by Judge Hazel in the Circuit Court for the Western District of New York—is very evidently cited under a misapprehension as to the effect of the ruling there made. The case does not, as supposed by counsel, follow Consolidated Gas Company v. Mayer, but the learned judge proceeds to distinguish it, and, in strict accord with the principles of San Diego, etc., v. Jasper and the other cases in line therewith, grants the injunction asked. He there says (156 Fed. 371):

"Counsel for defendant further contends that neither the city nor the inhabitants can be restrained in this suit under the doctrine announced by Judge Lacombe in Consolidated Gas Company v. Mayer et al. (C. C.) 146 Fed. 150, and later approved by Judge Laughlin in Richman v. Consolidated Gas Company, 114 App. Div. 216, 100 N. Y. Supp. 81. In the former case the court dealt with the provisions of a special act of the Legislature applicable to New York City fixing the price of gas sold to the city at 75 cents per 1,000 cubic feet. For failure to comply with its provisions, a penalty is prescribed in the act which the Attorney General or the district attorney is empowered to collect under section 1962 of the Code of Civil Procedure. For reasons stated in the opinion, the court, in the Mayer Case, declined to enjoin the city of New York. Such reasons, however, are not wholly applicable to this controversy, for here admittedly the city of Buffalo and its mayor threatens to compel the enforcement of Laws 1905, p. 2100, c. 739, which provides under section 20 that the commission, or any person, corporation, or municipality interested in the enforcement of such order, may apply to the Supreme Court for a writ of mandamus to compel compliance with such order. This court is therefore persuaded that the city of New York was not enjoined by Judge Lacombe because in that case the Attorney General and the district attorney, who were parties, were charged with the responsibility of recovering the specified penalty for noncompliance with the statute, and also because the price for gas to the city of New York was fixed by the Legislature at a less sum than that charged consumers; while in this case the city of Buffalo, in the absence of a contract providing for a less price, probably is liable for an amount equal to that charged the individual consumer. In any event, the action of the commission declares what shall be the maximum price to consumers of gas, and concededly the city is one of complainant's customers."

It will thus be seen that the first two of these cases are not necessarily at variance, while the last is in harmony with the principles above announced and by which the court was actuated in granting the order.

It is also urged that as matter of discretion the restraining order should be modified in the particular involved, since to permit it to stand in its present form will operate a hardship upon consumers by compelling them to pay an increased rate for gas over that fixed by

the ordinance. This is based upon the fact, disclosed at the argument, that since the making of the order the complainant has inaugurated a charge of $1 per thousand feet to consumers instead of a rate of 85 cents as fixed by the ordinance. The restraining order gives no authority to complainant in any express way for this course, nor was any such authority asked when the order was made, although it was disclosed in the discussion between counsel that some such course was in contemplation. While the propriety of such practice has been given countenance in Consolidated Gas Company v. Mayer, supra, and more recently by Judge Farrington in the Spring Valley Water Case, its propriety has not been passed upon in this case, nor in any direct way presented for consideration, and it will be time enough to consider it when brought up in some direct or appropriate manner. The only question now before the court is whether, under the circumstances disclosed, the court would be warranted in the exercise of its discretionary power in relieving the consumers from the restraint of the order by reason of the inconvenience or hardship to result from such increased charge proposed to be made by the complainant. This discretion—it is hardly necessary to say—must be a just and legal exercise of the power of the court, having in view its effect upon the rights of both parties to the controversy, and to be largely governed by a consideration of the question as to which side would suffer the greatest inconvenience from the court's action. Considering the character of the litigation and the object sought to be attained by the order in question, it would seem to involve largely a denial of justice to complainant to withdraw the restraint of the order from the consumers. One of the main purposes of the action is to restrain the enforcement of the obnoxious rate pending the determination of its validity, that the complainant may not be put to irreparable loss and damage in the meantime. Of what real benefit to complainant would be a restraint of the supervisors and the city—as to whom defendants concede the order is proper—if every individual consumer were left at liberty to insist upon an enforcement of the ordinance, with a free hand to involve the complainant in a maze of costly litigation should it refuse their demands? Complainant could be afforded absolutely no adequate redress against loss occurring as the result of such a course. On the other hand, against any inconvenience or hardship suffered by a consumer in having to pay an increased charge for the commodity, he can be fully protected by an adequate bond from the complainant or other measure for safeguarding his rights. In this respect the proper rule and its reason is very aptly stated by Judge Gilbert when granting the temporary injunction in the Contra Costa Water Case, supra, where he says:

"A temporary restraining order will work no substantial injury to the defendants, or to the consumers of water. They will be amply protected by a bond to cover the amount by which the rates are reduced by the resolution. On the other hand, if the order were denied and the contention of the complainants should finally be sustained, it is evident that the complainant would be subjected to serious inconvenience and injury, notwithstanding the remedy afforded it by that section of the resolution which permits it to shut off water from premises on which the rentals are 30 days in arrears, and would be required to bring a multiplicity of suits, which it is one of the functions of a

court of equity to prevent. It is a settled rule for the guidance of the discretion of courts in cases such as this to look to the balance of injury and inconvenience and to consider whether a greater injury will be done by granting than by refusing an injunction. In United States v. Duluth, 1 Dill. 474, Fed. Cas. No. 15,001, Mr. Justice Miller said: 'When the danger or injury threatened is of a character which cannot be easily remedied if the injunction is refused, and there is no denial that the act charged is contemplated, the temporary injunction should be granted unless the case made by the bill is satisfactorily refuted by the defendant.' See, also, Palatka Water Works v. City of Palatka (C. C.) 127 Fed. 161, and City of Newton v. Levis, 79 Fed. 715, 25 C. C. A. 161, and cases there cited, and Indianapolis Gas Co. v. Indianapolis (C. C.) 82 Fed. 245."

It is obvious to my mind that to grant the modification asked would render the order of no real protection to the complainant, but leave it subject to practically all the ills of which it complains. It would be an injunction in form which did not in fact enjoin; a granting of the shadow while withholding the substance. From these considerations I entertain no doubt as to the propriety of the restraining order in the respect under consideration, and that the modification asked for should be disallowed.

As to the second motion involved in the application, that to so modify the restraining order as to provide for the impounding by the court, to await its final action, of such sums as may be collected by complainant from consumers in excess of the ordinance rate, I think this should be granted. The only objections urged by complainant against such action are (1) the inconvenience to and onerous duty that will be cast upon the clerk in caring for such fund, and (2) that the rights of the consumers are amply protected by the bond heretofore given by the complainant. As to the first, it is a consideration with which the complainant is not concerned. As to the second, it appears that the excess collected by complainant will amount to something like $25,000 per month, from which it can readily be seen that it will take but a short period before the fund will exceed the amount of the bond already given; and while, as suggested, complainant could be required to give an additional bond, I am of opinion that the method proposed by the motion will afford a more satisfactory and perfect protection to those from whom the fund is collected. It is sanctioned by the course adopted in Consolidated Gas Company v. Mayer, supra, and by Judge Farrington in the Spring Valley Case, and can certainly work no harm to either side. A modification of the order may, therefore, be had conforming it in that respect substantially to the orders in those cases, the details thereof to be settled by the court should counsel fail to agree thereon.

In accordance with these views, the motion first discussed will be denied; the second will be granted.